The North and South Rolling Stock Company

*v.*

The People *ex rel.* M. F. Schaefer, State's Attorney.

*Filed at Mt. Vernon October 27, 1893.*

1.  Quo warranto — *information against corporation, in its name, admits its incorporation.* The effect of filing an information against a corporation, by its corporate name, to procure the forfeiture of its charter, or to compel it to disclose by what authority it exercises its corporate franchise, is to admit the existence of the corporation. When the information is filed against the defendant in its corporate name, and process served, and the defendant appears and pleads in the same corporate character, its corporate existence can not afterward be controverted.

2.  Same — *burden of proof.* Where the matters alleged in an information against a corporation, or the relator's replication, as ground for the forfeiture of its charter, are denied by the rejoinder, the burden will rest upon the relator to prove, by a preponderance of the evidence, that the defendant has committed or omitted acts which amount to a surrender or forfeiture of its rights and privileges as a corporation.

3.  Corporation — *evidence showing residence and place of business in this State.* Three persons, residents of St. Louis, Mo., being the owners of rolling stock leased by them to railroads of this State, became incorporated in this State in 1888, for the owning, leasing, buying, selling, etc., railroad rolling stock, and kept an office in this State. The assets and property of the corporation since its organization were wholly within this State. The business of the company was the collecting of rents for the use of rolling stock, and it did not appear that its business was such as to require the constant attention of its officers, either in this State or elsewhere. The company also kept an office in St. Louis, where the books were kept most of the time. Elections of directors were also had at the principal office in this State : *Held,* that these facts would not support a judgment of dissolution, and that the corporation had more than a mere nominal existence in this State.

4.  Same — *ownership of stock by non-residents.* There is no law which prohibits the ownership of the stock of domestic corporations by non-residents. Nor does the law require that any particular proportion of the stock of such corporations shall be owned by residents, except, perhaps, in the single case where a certain part of the directors are required to be residents, and then, doubtless, by implication, the shares constituting the qualification stock of the resident directors must be held by them.

5. Same—*residence of directors.* The public policy of the State, as declared by its constitutional and statutory law, requires that a majority of the directors of railroad corporations shall be residents. But no such requirement exists in case of other corporations. It is therefore no violation of law, and hence no ground of forfeiture of its charter, that all of the directors and officers of a corporation, other than a railroad company, have always been and still are non-residents.

6. Same—*keeping its books in this State.* The mere fact that a domestic corporation may have kept its corporate books most of the time at its office in St. Louis, near its principal office in this State, when such books have always been found at the office in this State when needed for inspection for any lawful purpose, is not a sufficient ground for dissolving the corporation.

7. The primary object of section 13 of the statute relating to corporations, which makes it the duty of a corporation to keep, at its principal office or place of business in this State, correct books of account of all its business, is to protect the rights of its stockholders. Its object may also be to aid the State in exercising its visitorial power over corporations, or, perhaps, to enable creditors of stockholders to ascertain the number of shares of stock standing in the names of each, so as to levy their executions or attachments thereon.

8. Same—*grounds of dissolution.* It is not every failure to comply with the exact letter of the statute which will expose a corporation to the loss of its franchises. In determining whether such departure from the provisions of the act of incorporation has occurred as will work a forfeiture, the same general principles of construction are applicable which govern valuable grants to individuals upon condition subsequent or precedent. A substantial performance of the conditions according to the intent of the charter is all that is required, and slight departures are overlooked.

9. Same—*failure to list property for taxation, no ground of dissolution.* The failure of a corporation to list its property for taxation is not such an act or omission as will amount to a forfeiture of its corporate franchise.

10. Same—*displaying sign at place of business.* The circumstance that there is no sign displayed at the office of a corporation, advertising to the public the location of the office, will have very little significance, where the business of the corporation involves no dealings with the general public, and there is no occasion to advertise its place of business.

Appeal from the City Court of East St. Louis; the Hon. B. H. Canby, Judge, presiding.

This was an information in the nature of a *quo warranto,* brought by the People of the State of Illinois, on the relation of the state's attorney of St. Clair county, in the City Court of East St. Louis, against the North and South Rolling Stock Company. A petition for leave to file the information having been granted, an information was filed, the substantial portions of which are as follows:

"M. W. Schaefer, State's attorney in and for said county, who sues for the People of the State of Illinois, in this behalf comes into court on this day and for the said People, and in the name and by the authority thereof gives the court here to understand and be informed that the North and South Rolling Stock Company, for the space of two years last past, and more, in the county and city aforesaid, has used, and still does use, without any warrant, charter or grant, the following liberties, privileges and franchises, to-wit, of owning, buying, leasing, selling and operating railroad rolling stock. All of which said liberties, privileges and franchises the said company, during all the time aforesaid, upon the said People, has usurped, and still doth usurp, in the county and city aforesaid, to the damage and prejudice of the said People, and against the peace and dignity of the same. Whereupon the said State's attorney, for the said People, and in the name and by the authority thereof, prays the consideration of the court here in the premises, and due process of law in this behalf, to make the said North and South Rolling Stock Company answer to the said People by what warrant it claims to have, use and enjoy the liberties, privileges and franchises aforesaid."

To this information, the defendant filed the following plea:

"And now, on this day, comes the said North and South Rolling Stock Company, by L. H. Hite, its attorney, and having heard read the said information, for plea in this behalf says it is a duly organized and chartered company, incorporated under the laws of the State of Illinois, with license and

charter duly issued by the Secretary of State of said State authorizing it to carry on the business of owning, leasing, buying, selling and operating railroad rolling stock, said corporation being organized under and by virtue of sections 1 to 28, inclusive, of an act entitled "An act concerning corporations," passed by the legislature of Illinois, approved by the Governor, and in force July 1, 1872. And by this warrant the said North and South Rolling Stock Company has used, during all the time mentioned in said information, and still uses, the said liberties, privileges and franchises of owning, leasing, buying, selling and operating railroad rolling stock, as the said North and South Rolling Stock Company well might and still may, without this, that said North and South Rolling Stock Company has usurped, or does now usurp, the liberties, privileges and franchises aforesaid, or any or either of them, upon the said People, as by the said information is above supposed,—all which matters the said North and South Rolling Stock Company is ready to verify, etc., wherefore it prays judgment," etc.

To this plea, the state's attorney filed two replications, as follows:

"And the said People of the State of Illinois say that the plaintiff ought not to be barred from maintaining the said information by reason of anything alleged in said plea, because the defendant has not kept, or caused to be kept, at its principal office or place of business in this State, correct books of account of all its business, as required by the statutes in such case made and provided, whereby the defendant has forfeited its franchises aforesaid,—and this the plaintiff is ready to verify.

"And for a further replication to said plea the plaintiff says, that all the stockholders, directors and officers of the defendant are now, and always have been, non-residents of this State; that the defendant does not now and never has kept an office or place of business in this State, but has hitherto

and does now keep its office and place of business in the city of St. Louis, State of Missouri, at which the business of defendant is transacted; that the franchise of the defendant was procured for the purpose of being exercised outside of this State in the manner aforesaid, and without any intention of making the defendant a domestic corporation in fact and substance, and that in truth the defendant has, since its organization, acted, for all practical purposes, as a foreign institution, and has maintained in this State a mere nominal existence, —and this the plaintiff is ready to verify." .

The following rejoinder was thereupon filed by the defendant to the second or additional replication, but by order of the court, entered by agreement of the parties, it was subsequently extended so as to apply to both replications:

"And the said defendant, as to the additional replication of the People's, etc., plaintiff, filed herein November 2, 1891, says that said plaintiff ought not, by reason of anything by them in that replication alleged, to have or maintain their aforesaid action against it, the said defendant, because, it says, that ever since the granting of its said charter, and since its organization up to the present time, it had kept an office in the city of East St. Louis, in the State of Illinois, where its elections and stockholders' meetings and meetings of its board of directors are regularly held, and where all its records and books of account and papers have been and are produced for the inspection of any stockholder, or his attorney, or other person interested, whenever requested by such person, and that the said charter and its privileges were sought and procured for the purpose of being exercised in the State of Illinois, and since its organization all its dealings in the matter of handling and running its rolling stock have been in the hands of and with the St. Louis, Alton and Terre Haute Railroad Company, an Illinois corporation, and that the *situs* of defendant's only property, its cars and rolling stock, has actually all the time been and now is in the State of Illinois;

that no stockholder or other person interested has ever sought to obtain any information or to do any legitimate business at defendant's said East St. Louis office and been denied the privilege or right so to do,—and this said defendant is ready to verify, wherefore it prays judgment if said plaintiff ought to have or maintain the aforesaid action thereof against said defendant."

This rejoinder was traversed, and issue taken thereon to the country. The cause was then tried by the court, a jury being waived by stipulation of the parties, and at such trial, the court found the issues in favor of the People, and rendered judgment ousting the defendant from the franchises in question, and precluding it from exercising the same under any right or claim whatever, and the defendant was also adjudged to pay the costs of the prosecution. From that judgment the defendant has now appealed to this court.

At the trial, the defendant, to maintain the issues on its part, read in evidence an agreement between Henry O'Hara, J. S. Berthold and C. M. Jennings, dated December 1, 1887, in and by which, after reciting that O'Hara, and the firm of Berthold & Jennings, were the owners of certain railroad freight cars, and were desirous of putting the same under one management and virtual ownership, for the purpose of avoiding conflicting interests, and for the better management of the property, it was agreed by them to form and incorporate themselves into a joint stock company, under the laws of the State of Illinois, by the name and style of North and South Rolling Stock Company, for the purpose of owning, leasing and operating railroad rolling stock, and buying and selling the same, and for any other purpose for which like companies are formed. And it was further agreed that the individuals named should subscribe equally to the capital stock of the proposed corporation, the amount of capital stock, the number of shares and the par value of the shares to be agreed upon before making application for incorporation; that the

affairs and business of the company should be conducted and managed by a board of directors, consisting of the stockholders, who for the first twelve months, and until their successors were elected, should be the three parties to the agreement; that the officers of the corporation should be a president, vice president and manager, and secretary and treasurer, who should comprise the board of directors as above stated; that O'Hara and Berthold & Jennings should lease to the proposed corporation the railroad freight cars owned by them respectively, and then running on the St. Louis, Alton and Terre Haute Railroad, (Belleville and Southern Illinois Division), and connections, for the term of fifteen years, with the privilege of purchase to be specified in the lease; that O'Hara should lease to the corporation 75 stock cars and 200 box cars, described as bearing certain numbers, and marked St. Louis and Cairo Short Line Railroad; that Berthold & Jennings should lease to the corporation 100 refrigerator cars, 156 box cars, and 58 coal cars, all bearing certain numbers, and being marked the same as above, and it was agreed that the parties would not be interested in any manner in any other rolling stock running on the St. Louis, Alton and Terre Haute Railroad and connections other than through the proposed corporation, during its existence.

The defendant also read in evidence its certificate of incorporation, and accompanying documents, whereby it was incorporated under the provisions of the act of the General Assembly of this State, entitled "An act concerning corporations," approved April 18, 1872. Those documents consisted, first, of a statement signed and acknowledged by O'Hara, Berthold and Jennings, for the purpose of forming a corporation under that act by the name above stated, in which it was declared that the object for which the corporation was formed was that of "owning, leasing, buying, selling and operating railroad rolling stock;" that the capital stock of the corporation was to be $300,000, to be divided into 3000 shares of

$100 each; that the principal office of the corporation would be at East St. Louis, St. Clair county, Illinois, and the duration of the corporation fifty years. Also the report of the commissioners appointed to open books of subscription to the capital stock of the proposed corporation, showing that the full amount of the capital stock had been subscribed, and that the above named parties had each subscribed for 1000 shares. Also the final certificate of incorporation by the Secretary of State, showing a compliance with the statute, and declaring the North and South Rolling Stock Company a legally organized corporation under the laws of this State. It was also shown that the certificate of incorporation was duly recorded in the office of the recorder of St. Clair county, February 17, 1888.

The defendant also read in evidence an instrument, dated February 1, 1888, by which O'Hara leased to the corporation 76 stock cars and 200 box cars, having the numbers and marks above stated, with an agreement to sell his interest in them to the corporation, at any time within ten years, at its election; and it was agreed that all of the rolling stock should remain on the line of the St. Louis, Alton and Terre Haute Railroad and its connections, and retain their respective marks and numbers.

Berthold was then called as a witness, and his testimony was in substance as follows: I am acquainted with the defendant corporation. O'Hara, Jennings and I organized it. We three were the stockholders. At that time we lived at St. Louis, Missouri. The corporation has an office in East St. Louis. It is in the office of T. L. Fekete. We pay him rent. Our meetings are held at the office in East St. Louis. We have never held stockholders' or directors' meetings elsewhere. The property of the company consists of railroad rolling stock. The agreement was that the property should be placed, where it has ever since remained, in the hands of the Cairo Short Line Railroad Company. That is an Illinois corporation.

16—147 Ill.

We have our local office for the purpose of daily business in St. Louis. It is at the office of Berthold & Jennings, southeast corner of Fourth and Chestnut streets. That office has been there ever since the organization of the company, and ever since the principal office was located at East St. Louis. There was never a request by any person to examine the books of account and papers at the principal office in East St. Louis but once. O'Hara made the demand, and they were produced and examined by him. They were free to all stockholders in St. Louis at any time. He was a St. Louis stockholder, and had his office right across the street from our St. Louis office, and knew where the books were.

After the first election, O'Hara, Jennings and I continued to be directors. I was president of the board, O'Hara vice president, and Jennings secretary and treasurer. For the last five years, the officers of the corporation have visited East St. Louis, the place of the principal office, two or three times a week on an average. On an average, the president or vice president, or some officer of the corporation has been in East St. Louis two or three times a week on business of the company.

On cross-examination he said: At the time the corporation was organized, the persons organizing it, and who became stockholders and officers, were non-residents. These persons all remained non-residents, and are still stockholders. The company never has had a stockholder or officer who was a resident of the State of Illinois. The capital stock is $300,000, all paid up. At the time of the organization, each stockholder took $100,000 of stock. The corporation was organized for the purpose of leasing, buying, selling and operating cars and locomotives. At that time the individual corporators had a lot of rolling stock. All the rolling stock was turned over by us, and that was considered as paying for the stock. At that time the headquarters of the rolling stock was in East St. Louis, but the stock itself may have been in Mississippi, Alabama, Texas and all over. It was not leased to any one at

the time, but we put it on the roads and got mileage. After the company was organized, it remained with the St. Louis, Alton and Terre Haute Railroad Company, we collecting the mileage. The only property of the corporation that I know of was the rolling stock on the Short Line. We have acquired cars since, but all we have is on that line.

I do not know that we ever listed the property of the company for taxation in the State of Illinois. I have been president, and Jennings has been secretary and treasurer of the company all the time. O'Hara has been vice president part of the time. The present stockholders are O'Hara, Jennings, George S. Hoke and myself. O'Hara has 1000 shares, Jennings 999, Hoke 1, and I 1000.

The only business transacted by the company has been with reference to the use of the cars and the collection of mileage. We have books of account, and corporation records, showing stockholders' and directors' meetings. We have a regular set of books. Any one can find our office at St. Louis by getting our address and going to it. There is no sign to show where the office is. We three gentlemen who organized the company have had other business. Jennings and I have had a lumber yard. When we come to Illinois it is to see to those cars. I have not been in East St. Louis on private business of my own for four years. I have come to see about those cars. We have clerks who look after the lumber business; have no yard now.

We have an office in Fekete's office, and pay him $10 a year rent. We have no furniture or other property of the corporation there. The corporate books are not kept there regularly. The only time when the stockholders visit the East St. Louis office is at the directors' meetings. We never did business there and never had occasion to. We talked over what had been done. That was at a stockholders' meeting. Those meetings were held once a year, it may be oftener. Anybody interested could find our office in East St. Louis.

I do not think the public would need to know where to find it. Our charter calls for a principal office in East St. Louis. We had no sign up there and no person staid there. I go to Fekete's office pretty often. The company never undertook to keep its books there. I do not know that the company ever paid any taxes in Illinois. It does not show on our books that we ever paid taxes there. I do not know what the Cairo Short Line did.

As president, in my visits of two or three times a week, I have been at Fekete's office, where our principal office is, much oftener than once a year. I never heard of any inquiry being made at that office or in St. Louis as to the whereabouts of the corporation. There has been no inquiry made in relation to our property or otherwise, so far as I know. We never owned any road-bed or right of way, nor assumed to run a railroad.

The foregoing was all the evidence offered, and upon that evidence, the court found the issues for the relator, and rendered judgment of ouster.

Mr. L. H. HITE, for the appellant.

Mr. M. D. SCHAEFER, and Mr. M. MILLARD, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

To determine the propriety of the finding and judgment of the court in this case, it is important, in the first place, to notice the precise nature of the issues which were submitted for trial. The information was filed by the state's attorney against the "North and South Rolling Stock Company," by that name, requiring it to answer by what warrant it claims to have, use and exercise the liberties, franchises and privileges of owning, buying, leasing, selling and operating railroad stock. The defendant answered by setting up its incorporation under the general law of this State in relation to corporations, the purposes for which it was incorporated, as declared

in its certificate of incorporation, being to use and exercise the precise franchises and privileges mentioned in the information.

The relator, by proceeding against the defendant by its corporate name, must be deemed to have admitted the fact of its incorporation. The weight of authority may now be regarded as sustaining the proposition, that the effect of filing an information against a corporation by its corporate name, to procure the forfeiture of its charter, or to compel it to disclose by what authority it exercises its corporate franchises, is to admit the existence of the corporation. When, therefore, the information is filed against the defendant in its corporate name, and process is issued and served accordingly, and the defendant appears and pleads in the same corporate character, its corporate existence can not afterwards be controverted. High on Extraordinary Legal Remedies, sec. 661.

It will thus be seen that the legality of the defendant's incorporation is not assailed, but the relator seeks to bring the case within that clause of the statute in relation to *quo warranto* which authorizes the filing of an information where "any corporation does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation." For the purpose of showing such acts of omission or commission, the relator has filed two replications. The first alleges that the defendant has not kept or caused to be kept at its principal office or place of business in this State correct books of account of all its business, as required by statute. The second replication alleges that all the stockholders, directors and officers of the defendant are now and always have been non-residents of this State; that the defendant does not now and never has kept an office or place of business in this State, but has hitherto and does now keep its office and place of business at St. Louis, Missouri, at which its business is transacted; that the franchise of the defendant was procured for the purpose of being exercised outside of this State in the

manner aforesaid, and without any intention of making the defendant a domestic corporation in fact and in substance, and that the defendant has, since its organization, acted for all practical purposes as a foreign institution, and has maintained in this State a mere nominal existence. The rejoinder constitutes a substantial traverse of these allegations, and upon the issues thus formed, the case was tried.

No question being made by the respondents as to the propriety of the replications, or as to whether they do not constitute clear departures from the case made by the information we are disposed to treat the issues as properly joined. But it may be observed that as to all the matters thus submitted for trial, the burden of proof was on the relator, and unless he has proved by a preponderance of the evidence that the defendant has committed or omitted acts which amount to a surrender or forfeiture of its rights and privileges as a corporation, the judgment of ouster can not be sustained. No evidence was introduced and no witness was called on behalf of the relator, the cause being submitted upon the documentary evidence introduced by the defendant, and upon the testimony of Berthold, one of the defendant's stockholders and directors and its president, and who was called as a witness by the defendant.

From the evidence thus introduced it appears that, on the first day of December, 1887, the firm of Berthold & Jennings, who were then and still are residents of and doing business in St. Louis, Missouri, were the owners of a large number of railroad freight cars, which were then leased to the St. Louis, Alton and Terre Haute Railroad Company, a corporation organized under the laws of this State, and were then in use by that company on its Belleville and Southern Illinois Division, commonly known as the St. Louis and Cairo Short Line, a line of railroad situated in this State; that Henry O'Hara, who also was then and still is a resident of and doing business in St. Louis, was in like manner the owner of a

large number of other railroad freight cars, which were leased to the same Illinois corporation, and in use on the same line of railroad in this State; that for the purpose of placing these cars under one management and avoiding conflicting interests, and for the better management of the property, these parties agreed to incorporate themselves into a joint stock company, under the laws of this State, by the name and style of the North and South Rolling Stock Company; that the three parties should subscribe equally to the capital stock of the proposed corporation and should constitute its first board of directors and officers; that they should turn over the cars owned by them respectively to the corporation on certain prescribed terms, and should not be interested in any manner, except through the proposed corporation, in any other rolling stock running on the St. Louis, Alton and Terre Haute Railroad or its connections.

In pursuance of this agreement the corporation was organized, its entire property and assets consisting of these cars, and other cars subsequently purchased, and all leased to and in the possession of an Illinois railroad corporation, and in use on a line of railroad in this State, and its entire business, so far as the evidence shows, consisting of periodical settlements with the lessee railroad company for the mileage or other rents earned by the leased cars.

It will thus be seen that the property and assets of the corporation, at the time of its organization were and ever since that time have been wholly within this State. To what extent its business has been actually transacted in this State is not clearly shown, but, as the burden of proof on this point is upon the relator, failure of proof militates against the case of the prosecution rather than that of the defense. It may be said, however, that there is nothing in the evidence tending to show that the corporation had any business which required constant attention on the part of any of its officers or agents, either in this State or elsewhere. As its rolling stock has been

operated by the lessee corporation, the defendant had nothing to do with that part of the business, and its settlements for mileage or rents may, so far as appears, have required attention only at fixed intervals.    Where those were made whether in Illinois or Missouri, the evidence fails to show with certainty, although perhaps it may be inferred from the fact that the lessee corporation was resident in Illinois and had its principal office in East St. Louis, and the further fact that the defendant's president made frequent visits to that place on the defendant's business, that the object of those visits was, in part at least, to make settlements with the lessee.

The testimony of Berthold shows, and in this he is not contradicted, that the defendant, ever since its organization, has kept an office in East St. Louis, and that all official meetings of the stockholders and directors have been held there.    He admits that no officer or agent of the corporation has been kept in constant attendance at that office, and there is nothing showing that the business of the corporation has ever been such as to require that to be done.    He testifies, however, that he, as president of the company, has been in the constant habit of going to East St. Louis as often as two or three times a week to look after its business, and it may fairly be inferred from his testimony, that while there, he made his headquarters at the East St. Louis office.    He also testifies that the other officers of the corporation frequently went over to East St. Louis to look after the company's business.

It appears that the defendant has also an office in the city of St. Louis, that office being at the place of business of Berthold & Jennings, and across the street from the place of business of O'Hara, but the evidence leaves it very much in doubt as to how much and what portion of the corporate business is transacted at that office.    It seems to have been more convenient for the three stockholders to have the books kept there, but the witness testifies that they were kept part of the time at the East St. Louis office, and that they had always been

there when any stockholder or other person had desired to examine them at that place.

In view of all the evidence we are of the opinion that the averments of the relator's replication, that the defendant's franchise was procured for the purpose of being exercised out of this State, and without any intention of making the defendant a domestic corporation in fact or in substance, and that since its organization it has acted for all practical purposes as a foreign institution, and has maintained in this State a mere nominal existence, are not proved. The property of the corporation is all located in this State, and is managed, used and controlled here. Upon its organization it established an office in this State, which it calls its principal office, and where all meetings of the stockholders and directors have in fact been held, and that office has ever since been and is still maintained. A considerable, if not the most material portion of its business is and has always been transacted, and its substantial interests are and have always been, in this State. Under these circumstances, its existence here must be held to be much more than nominal. If it has forfeited its franchise, it must be by reason of some other act than that of falsely and fraudulently posing as a domestic corporation, while it has in substance and in fact accomplished its migration to another jurisdiction.

The facts of this case are different in all their essential features from those appearing in *Land Grant Railway and Trust Co.* v. *Board of Commissioners of Coffey County,* 6 Kansas, 245, and *Hill* v. *Beach,* 12 N. J. Eq. 31, to which we are referred. In the first of these cases a corporation had been chartered by the Legislature of the State of Pennsylvania, and authorized to engage in certain business enterprises in any of the States or Territories of the United States, except the State of Pennsylvania. The corporation went to the State of Kansas and there engaged in railroad building, and brought mandamus in the courts of that State to compel the county com-

missioners to subscribe to the capital stock of its railroad. The court, in denying its right to that writ, held that the rules of comity did not require that State to permit the corporation to do business within its borders which it was forbidden to do in the State of its creation, and that where a corporation attempts to migrate in a body to another State, it dissolves into its original elements, and that the persons who comprise it become only individuals. So, in *Hill* v. *Beach*, a corporation was organized under the laws of New York to carry on the business of quarrying stone in a quarry in New Jersey, and it was held that the company would not be recognized in the courts of New Jersey as a legally constituted corporation, and that persons doing business in that State under such assumed corporate capacity would be treated as and held to the responsibility of partners. None of the elements forming the *ratio decidendi* in those cases are present here.

In this case, however, it is proved, (1) that the stockholders, directors and officers of the corporation are non-residents of this State, and (2) that the corporation has failed to keep its corporate books continuously at its principal office in this State, and it remains to be seen whether either or both these facts constitute a sufficient ground for declaring a forfeiture of its corporate franchise.

So far as the ownership of the stock of a domestic corporation by non-residents is concerned, we are aware of no rule of the common law, and certainly none is prescribed by statute, which forbids it. Nor does the law require that any particular proportion of the stock of such corporations should be owned by residents, except, perhaps, in the single case where a certain part of the directors are required to be residents, and there doubtless, by implication, the shares constituting the qualification stock of the resident directors must be held by them. But otherwise, there seems to be no rule forbidding the ownership of all the stock by non-residents. Such ownership, as has been frequently decided, has no effect upon the

citizenship of the corporation, as affecting the jurisdiction of the Federal Courts, and we see no reason why, in any point of view, it should have any tendency to take from the organization the position and status of a domestic corporation.

So far as we have been able to find, there is no rule of law requiring that the directors of corporations organized under the "Act concerning corporations," approved April 18, 1872, or any portion of them, be residents of the State. Section 11, of article 11, of the Constitution provides that a majority of the directors of all railroad corporations shall be residents of this State, and that provision is repeated, in substance, in section 11, of the act for the incorporation of railroad companies, approved March 1, 1872. But no such provision is to be found in the Constitution or statutes applicable to those classes of corporations which may be organized, as was the one now before us, under the general law concerning corporations. The fair conclusion is, that while the public policy of the State, as declared by its constitutional and statutory law, requires that a majority of the directors of railroad corporations shall be residents, no such requirement exists in case of other corporations, and that it is no violation of law, and therefore no ground upon which a forfeiture of its franchises can be declared, that all the directors and officers of the corporation now before the court are, and since its organization have been, non-residents.

Nor are we disposed to hold that the mere fact that the corporate books have been kept most of the time at the company's St. Louis office, is of itself a sufficient ground for dissolving the corporation. Its two offices are on the opposite sides of the Mississippi River, and but a short distance from each other. Whenever the books have been required at the East St. Louis office by any stockholder or other person entitled and desiring to see and examine them, they have been produced at that office, and there is nothing showing the slightest indisposition on the part of the corporation to have

its books there when needed for any lawful purpose. It is true that keeping its books for most of the time in St. Louis may not be a strict compliance with the statute in that behalf, but it does not appear that any interest, either public or private, has been or is likely to be imperiled or incommoded thereby.

The thirteenth section of the statute under which the defendant was incorporated provides that it shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business, and every stockholder in such corporation shall have the right at all reasonable times by himself or by his attorney, to examine the records and books of account of the corporation. It would seem that the primary object of this statutory provision is to protect the rights of stockholders, and the evidence is positive that whenever a stockholder has desired to examine the books at that place, they have been produced there for his examination. It is probable that the statute may have had other objects in view in requiring the books to be kept at the principal office in this State, as for instance to aid the State in exercising its visitorial power over the corporation, or, perhaps, to enable creditors of the several stockholders to ascertain the number of shares of stock standing in the names of each, so as to levy their executions or attachments thereon, but there is no reason to suppose that the books would not have been instantly produced whenever required for either of those purposes.

It is not every failure to comply with the exact letter of the statute which will expose a corporation to the loss of its franchises. In determining whether such departure from the provisions of the act of incorporation has occurred as will work a forfeiture, the same general principles of construction are applicable which govern valuable grants to individuals upon conditions subsequent or precedent. In all such cases, a sub-

stantial performance of the conditions, according to the intent of the charter, is all that is required, and slight departures are overlooked. High on Extraordinary Legal Remedies, sec. 651.

Some stress is sought to be laid upon the fact that neither at the office in East St. Louis, nor at the office in St. Louis, was any sign displayed, advertising to the public the location of the office. But this circumstance seems to have very little significance, when it is remembered that the business in which the corporation was engaged involved no dealings with the general public, but only with the corporation to which its cars were leased, and that there was therefore very little if any occasion to advertise its place of business to the public.

Considerable significance is also sought to be given to the fact that the defendant's officers have never listed the corporate property in this State for purposes of taxation. Whether it was listed by the lessee who had it in possession is not shown. The property was all tangible property existing in this State, and was within the reach of the officers whose duty it was to levy and assess taxes. But even if its property escaped taxation solely through the negligence of its officers to see to it that the property was properly listed, we are unable to see how such fact would have a tendency to sustain the judgment in this case. Important as is the duty of every property holder, whether a natural person or a corporation, to have his property properly listed for purposes of taxation, so that each may bear his proper share of the public burdens, we are not aware that a failure by a corporation to list its property for that purpose has ever been held to be an act amounting to a forfeiture of its corporate franchise.

The relator in his argument has relied very largely upon the case of *State* v. *M. L. S. & W. Ry. Co.* 45 Wis. 579. While we are not prepared to yield our assent in all respects to either the reasoning or conclusion of that decision, it is sufficient for our present purposes to distinguish that case from this by pointing out the fact that in that case, there was a

demurrer to the information, whereby the facts alleged were all admitted. Those facts were, that the principal or general office of the corporation was in the city of New York; that the books and records of the corporation were not and never had been kept within the State of Wisconsin, and were then in the city of New York, and that none of the general officers of the corporation resided in Wisconsin, but that its president, secretary and treasurer all resided in the city of New York. These facts being all admitted it was held that sufficient ground was shown for dissolving the corporation. In some respects the decision is based upon Wisconsin statutes which are essentially different from ours. In the present case, however, issues were taken upon the allegations of the relator, and many of them failed of being proved, thus necessitating, in our opinion, a different result from that reached in the Wisconsin case.

After carefully considering the entire case, we find ourselves unable to concur with the decision of the learned judge who tried the case in the court below. The judgment therefore will be reversed, and the cause will be remanded to the City Court of East St. Louis.

*Judgment reversed.*