(No. 37683.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LORRAINE MONROE, Plaintiff in Error.

*Announced January 18, 1963—filed March 25, 1963.*

R. Eugene Pincham, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Per curiam: The appellant, Lorraine Monroe, was found by the criminal court of Cook County to be guilty of criminal contempt of court and sentenced to the county jail until such time as she should comply with the order of the court by answering certain questions asked her before a grand jury.

In October, 1962, a grand jury was investigating the alleged distribution by the All States News Company of obscene literature to the news agencies in the city of Chicago. The appellant was employed by this company to do office and clerical work. In October and again in December

of 1962 the books and records of the All States News Company were produced before the grand jury by the plaintiff in error pursuant to a *subpoena duces tecum.* Between her October and December grand jury appearances portions of the books were erased, scratched over and otherwise altered. At the December session she identified the books as the books of the All States News Company, her employer. However, she refused to answer other questions that would have required her to explain orally certain entries and notations in the books on the ground that to do so might tend to incriminate her.

Specifically, the appellant was asked to explain what certain checks shown on a sheet designated "distribution of charges" were for, what the markings "BB1029" and "BB1210" on said checks stood for, and whether these notations meant "bedside book 1029" and "bedside book 1210" which had been purchased from a certain publisher. She was asked similar questions regarding the initials "NB" and "MR". The appellant was also asked if the description "The Sex Riddle" contained in one of the company's books was the title of a book purchased from another corporation, and if other figures indicated that All States News Company purchased 56,450 copies of this publication at 30c each and paid a total for said publication of $16,935. She refused to answer all of the above questions, as well as similar questions directed to other entries, for the reason that her answers might tend to incriminate her. In response to a question from the assistant State's Attorney she testified that, if asked, she would for the same reason refuse to explain all of the material of her company produced before the grand jury.

The appellant, in addition to identifying the company's books, did answer questions as to whether certain entries had been crossed over, but simply stated "As you can see they have." On one occasion she refused to state if those altera-

tions were on the books when she brought them in in October, although earlier she had stated that she "could not tell" the prosecutor if the books were altered since October. However, it is not contended that the defendant by answering these questions waived her right to refuse to answer those questions that she did not answer. The trial court specifically inquired into the possibility of the defendant's having waived the right to claim the privilege against self-incrimination because of having answered earlier questions. The defendant counsel maintained that this principle was not applicable and the State's Attorney did not assert otherwise.

Nor is there any question presented as to whether the answers to the questions asked of the defendant would in fact tend to incriminate her or form a link in a chain of facts that, taken collectively, would tend to incriminate her. This was apparently conceded by the State. The basis of the trial court's ruling was that the defendant could not refuse to explain orally the entries in the corporate books, even though her answers would tend to incriminate her. The defendant was ordered to answer all questions asked of her "that are pertinent to the books and records of the corporation". The witness at no time was offered personal immunity from prosecution or asked to sign an immunity waiver.

Because the privilege against self-incrimination is personal and applicable only to natural individuals, the official records and documents of organizations such as corporations may not be withheld by their custodian under a claim of this privilege. (*People* v. *Ryan,* 410 Ill. 486; *People* v. *Munday,* 280 Ill. 32; *Wilson* v. *United States,* 221 U.S. 361, 55 L. ed. 771.) This is true even though certain matters contained therein might tend to incriminate the custodian himself. Corporate and organizational transactions are often provable only through their records, and effective

law enforcement requires that these papers be made available. (*United States* v. *White,* 322 U.S. 694, 88 L. ed. 1542.) The ability to so obtain such records cannot reasonably be made dependent upon whether or not the particular custodian involved may be incriminated by their production. They are not his private records but belong to the organization as a whole. By accepting their custodianship he is held in effect to have waived any privilege against self-incrimination that he may have otherwise had as to the production of these documents.

It is the State's position that where, as in the present case, corporate books when produced prove not to be self-explanatory, but are illegible or partly abbreviated, the State's retained visitorial power requires the corporate representative subpoenaed to orally explain them, even though to do so might tend to incriminate him. This is particularly true, according to the State, where, as an aid to the effective use of this visitorial power, the legislature by statute has required the corporation to maintain complete and accurate books. (Ill. Rev. Stat. 1961, chap. 32, par. 157.45; *North and South Rolling Stock Co.* v. *People ex rel. Schaefer,* 147 Ill. 234.) In effect, the State's position is that a custodian of corporate books, by accepting his position, waives not only the privilege of refusing to produce the books but also the privilege of keeping silent as to his self-incriminating knowledge regarding those books. We do not agree with this contention. Section 10 of article II of the Illinois constitution provides that "No person shall be compelled in any criminal case to give evidence against himself," and suggests no such exception as to the custodian of organizational books.

A situation closely analogous to that here presented was decided by the United States Supreme Court in the case of *Curcio* v. *United States,* 354 U.S. 118, 1 L. ed. 2d 1225. The witness there refused to answer questions as to the loca-

tion of certain books of a labor union that he had failed to produce. In reversing his subsequent contempt conviction for failure to answer these questions the Supreme Court noted that, although Curicio should have produced the books, he would not be compelled "to condemn himself by his own oral testimony". The court concluded that the retained visitorial or regulatory power possessed by the State did not require that the custodian waive his constitutional privilege as to oral testimony. "By accepting custodianship of records, he has voluntarily assumed a duty which overrides his claim of privilege only with respect to the production of the records themselves." The decision followed the *dictum* in the earlier case of *Wilson* v. *United States,* 221 U.S. 361, 385, 55 L. ed. 771, 781, where the court noted that, although custodians must produce corporate books, "They may decline to utter upon the witness stand a single self-criminating word. They may demand that any accusation against them individually be established without the aid of their oral testimony."

The privilege against self-incrimination is designed to prevent "the use of legal process to force from the lips of the accused individual the evidence necessary to convict him." (*United States* v. *White,* 322 U.S. 694, 88 L. ed. 1542.) The fact that complete and accurate records must by statute be maintained by the corporation cannot change this result. The Business Corporation Act contains its own penalties for failure to comply with its provisions (Ill. Rev. Stat. 1961, chap. 32, par. 157.101) and presumably in a proper case the corporation could even be involuntarily dissolved. (Ill. Rev. Stat. 1961, chap. 32, par. 157.82; *People ex rel. Coggeshall* v. *Opera House Co.* 249 Ill. 106.) No legislative intent that an individual, by becoming a custodian of corporate books, waives his personal privileges against self-incrimination is therein expressed and, due to the serious constitutional question such a provision would present, none will be implied.

The order of the criminal court of Cook County finding the appellant to be in criminal contempt of court is therefore reversed.

*Order reversed.*