STATE ex rel. CHAMBERLAIN et al, Respondents, v. PUBLIC DRUG COMPANY, Appellant.

(170 N. W. 161).

(File No. 4037.   Opinion filed December 31, 1918.   Rehearing denied March 12, 1919.)

1.  Quo Warranto—Forfeiture of Corporate Charter—Usurpation of Franchise—Jurisdiction—Defect of Parties—Stockholder as Co-relator, Materiality—Statute.

In a suit by the state on the relation of a state's attorney,

for annulment and forfeiture of charter and franchise of a domestic corporation, in which a stockholder of another corporation is joined as co-relator, the complaint alleging that defendant corporation has usurped the rights and franchise of the corporation of which he was a stockholder, **held**, on demurrer to the complaint for defect of parties plaintiff, in that no cause of action is stated in favor of·said co-plaintiff, that so far as the question of jurisdiction is concerned, said allegations as to the interests of said co-relator are immaterial; since the court cannot in such a proceeding determine his individual legal rights or his alleged wrongs; that under Civ. Code, Sec. 574, providing that in such an action brought on relation of a person having an interest "in the question," the name of such person shall be joined with state as plaintiff, etc., the interest of the relator, under said statute, is one peculiar to this class of actions, the only "question" involved being whether or not the corporation has done or failed to do any act in law constituting a ground for annulment of its charter or articles of incorporation; that under Sec. 571, prescribing grounds as foundation for such action, such grounds are not affected by the fact that a private person is joined as relator; the state being the real plaintiff, since the only judgenmt to be entered is one for forfeiture or annulment of the charter; and such demurrer was properly overruled.

2.   **Quo Warranto—Annulment of Corporate Charter—Officers, Directors, as Co-defendants, Whether Necessary.**

It is not necessary, in a suit by the state on the relation of a state's attorney, under Civ. Code, Sec. 571, to annul and forfeit the franchise of a corporation on ground that it has failed to comply with express statutory law, to join as co-defendant with the defendant corporation, any officers or directors of the corporation.

3.   **Quo Warranto—Actions—Annulment of Corporate Charter— Venue—Court of County Other Than County of Domiciliary Office, Jurisdiction—State's Attorney, Of What County, May Act—Estoppel, Re Jurisdiction.**

Under Code Civ. Proc., Sec. 571, providing that an action may be brought by any state's attorney in any county of state on leave granted by circuit court or judge thereof, for purpose of vacating charter or articles of incorporation, or for annuling existence of a corporation, etc., and Sec. 572, authorizing suit on leave granted "upon application of any state's attorney, and · the court or judge" may direct notice of such application to be given a corporation, etc., **held**, that the objection that the circuit court of a county other than that of the county in which the domiciliary office of defendant corporation is established by its charter, and in which the resident agent resides, is without

jurisdiction, is untenable; as is the objection that none but the state's attorney of the county of such domiciliary office may institute the suit.    So held, where, upon motion of defendant corporation, the venue was changed from one county to that in which the domiciliary office was located; that such an action may be begun by the state's attorney of and in any county, upon leave of the circuit court or judge, and when so brought such court has jurisdiction of the subject matter; and the court to which by proper change of venue the action was transferred, acquired like jurisdiction of both parties and subject matter; since a domestic corporation for purposes of being sued, is a resident of county where its principal place of business is located, and suit against it should be brought in such county; following 26 S. D. 402.    Nor can defendant corporation question the jurisdiction of the latter court, or the regularity of the order changing venue, where such change was made upon its motion.

4.   **Actions—Forfeiture of Corporation Charter, Venue, Change of— State's Attorney of County of Suit, Authority to Follow Suit.**

Under Pol. Code, Sec. 928, defining duty of a state's attorney, such officer is authorized to prosecute an action for the state on his relation, to annul and forfeit the charter of a corporation, in any county to which it may be removed by change of venue.

5.   **Corporations—Annulment of Charter—Doing Business in Another State—Resident Agent Law—Business Offices Outside, "Main Office" In State—Annual Reports, Books Kept in State, "Main Office" in State, Whether Required of Such Corporation— Statutes.**

Under Civ. Code, Sec. 780, as amended by Laws 1907, Ch. 104, Sec. 6, providing that corporations for mining, manufacturing, or any other business pursuit may be formed as provided in this code and have all rights and be subject to all duties, restrictions and liabilities therein mentioned so far as same applies or relates to such corporations; and Sec. 3 of said Ch. 104, providing that every corporation of this state not doing or carrying on business within the state shall appoint a resident agent, who shall reside at the "place of business or domiciliary office of such corporation in this state designated in the articles of incorporation," and that service of legal process upon such agent shall constitute legal service upon such corporation; and Sec. 7 of Ch. 104, amending Civ. Code, Sec. 786, providing that any corporation created under the general incorporation laws may provide in articles of incorporation for having one or more business offices without this state at any place named in articles of incorporation, and to hold any meeting of directors or stockholders thereof at either of such offices so provided for, but

that every such corporation having a business office out of this state must have its "main office for the transaction of business within this state to be also designated in said articles," held, in a suit by state on relation of state's attorney, to annul and forfeit the charter and franchise of a corporation chartered under said law as amended by said Ch. 104, that under said law as so amended, every corporation organized in this state is required to maintain its "main office" within the state, but with authority to establish branch offices at which it may exercise its corporate powers in other states; that said Sec. 3, requiring appointment of resident agent by certain state corporations not doing or carrying on business within the state, and requiring designation of the residence of such agent in the articles of incorporation, was intended to locate a place at which such agent can be found for service of process, which residence may be either at the **place of business** of the corporation, or at its domiciliary office, the latter being the place of residence of the agent. So **held**, in sustaining trial court in overruling a demurrer to a complaint in such character of action, alleging that defendant corporation had failed to make annual reports as provided in Rev. Civ. Code, Sec. 784, that it had never maintained any office or other place for transaction of business within, or transacted any business, within this state, nor kept any of its records, minutes of proceedings, stock and transfer books, safes, cases, books, account papers, and documents at any office or elsewhere within the state, or subject to and within reach of summary process issued by any of the courts thereof, and had thereby wrongfully and unlawfully deprived the state of its domicile of the right to exercise visitorial power, supervision and control over it.

**6. Corporations—Forfeiture of Charter—Neglect to Obey Statute, Motive, Immateriality of.**

Neglect or refusal of a corporation to perform duties enjoined by the charter need not proceed from bad or corrupt motive; it is enough that they be designedly omitted. So held, in an action to forfeit a corporate charter.

Polley, J., dissenting.

Appeal from Circuit Court, Hughes County. Hon. JOHN F. HUGHES, Judge.

Action by the State of South Dakota on the relation of A. A. Chamberlain, State's Attorney for Beadle County, and Frederick B. Kremer, against the Public Drug Company, a domestic corporation, to annul and forfeit the charter and franchise of defendant corporation. From an order overruling defendant's demurrer to the complaint, it appeals. Affirmed.

*Selover, Schultz & Selover,* and *Chas. E. DeLand,* for Appellant.

*A. A. Chamberlain,* State's Attorney, and *Crawford & Warren,* for Respondent.

(1) To point one of the opinion, Appellant cited:

Code Civ. Proc., Sec. 571; subd. 5; Sec. 574; and submitted that:

Kremer thus becomes essentially the person "on the relation or information" of whom this action was brought.. Thus it appears that this suit is not brought in a "case of public interest," but comes under the alternative provision (Sec. 571) of "in every other case," etc., and under the provision (Sec. 574) "of a person having an interest," that is, a private interest. This feature in law *dominates this action.* It cannot, we contend, be regarded as an action in "case of public interest," since if it were, not only could security not be required, but equally certain is it that Kremer *could not be made a party plaintiff.*

(2) To point two, Respondent cited:

State ex rel. Denu v. Rapid City Library Ass'n, 33 S. D. 248.

(3) To point three, Appellant cited:

Secs. 100, 571, Code Civ. Proc.; Pol. Code, Sec. 928; Mullen v. Northern Accident Ins. Co. 26 S. D. 402; State v. Flavin, 35 S. D. 530.

Respondent submitted that:

Any Circuit Court, or judge thereof, in this state, can authorize any State's Attorney, in the county of such attorney, to bring the action; citing:

Secs. 571, 522, 574, Rev. Civ. Code; People v. Cook 6 How. 448; 1 Wait Pr. 187.

(5) To point five, Appellant cited:

Civ. Code, Sec. 780, as amended by Laws 1907, Ch. 104, Sec. 6; Secs. 1, 2, 3, 7, said Ch. 104; Sec. 440, Rev. Civ. Code; Comp. Laws 1887, Sec. 2932; Sec. 412, Civ. Code Dak. Ter. (Levisee) as amended by Laws 1887, Ch. 36; Sec. 517, Civ. Code, 1877; Demorest v. Flack, 128 N. Y. 205; Tiffany v. La Plume Condensed Milk Co., 141 Fed. 444; Robinson v. Greenleaf Johnson Lum. Co., 153 N. C. 120, 68 N. E. 1064; and submitted that:

If the concern is incorporated under Sec. 3, Ch. 104, Laws 1907, to do and carry on business exclusively outside of this state,

it is still created under "the general incorporation laws of this state" within the meaning of Sec. 786, Civ. Code, and will of course "name" in its articles one or more places outside this state as its "business offices." But as regards the recital in its articles of the name of a resident office, the language of Sec. 3, Chap. 104, would apply; and the recital in the articles would be such as to indicate "the place of business or domiciliary office" where the resident agent "shall reside." And this we contend is the legal meaning of the allegations in this complaint.

In other words, the idea of a "place of business" is merged in that of a "domiciliary office" kept by the resident agent; and such a corporation could not have a real "business" office to be kept by its resident agent as a "domiciliary office," nor could it properly "designate" in its articles an office "for the transaction of business within this state," within the meaning of Sec. 786. In still other words: Sec. 786, wherein it refers to "a main office for the transaction of business within this state," *does not apply to a corporation chartered to carry on business exclusively outside of this state.* No such corporation is or ever was contemplated by Sec. 786. And while the provisions of that section do still comprehend and apply to a corporation chartered under the 1907 law, wherein that section refers to outside offices and the holding of meetings thereat; yet it is inapplicable to such corporation wherein it refers to recitals in articles of incorporation relating to a business office *in the state,* since the law of 1907 *supplies new language* specifically applying to what shall be therein *regarding a place or office of the resident agent.* That Sec. 445, Rev. Civ. Code, requiring "a record of all their business transactions" to be kept, a "journal" of its meetings, and a "stock and transfer book," does not mean that these repositaries must be kept "at the principal place of business" designated in the articles, even if it were chartered, to do business only within this state; much less if chartered to do business only within the state, since the persons entitled to "inspection" thereof might and probably would all reside without this state; that under this section construed with amended Sec. 786, such records, etc., may, and should be kept at the place where its business is carried on *outside of this state.* That the same is true of its "books of account" under Sec. 782, and its by-laws,

which under Sec. 430, are to be kept "in the office" of the corporation.

That, under Sec. 478, Rev. Civ. Code, authorizing the Legislature to "examine into the affairs and conditions" of corporations, to place "directors, offficers and stockholders" under oath, etc., to "examine the safes," etc., and to "compel the production of keys, books," etc., by "summary process," while the statute (Sec. 410, as amended by Ch. 104, Laws 1907, Sec. 1,) requires but one officer, and no director, to reside in this state, and no stockholder need reside therein,—the visitorial powers may and should be exercised, as against a corporation chartered as aforesaid, by either a South Dakota court, through enforcement of and order upon its resident agent or officer, for production of books, etc., against its non-resident directors and officers, or by a court of the state where the corporation is actually doing business; thus meeting the constitution that the books, etc., must be kept within this state in order to be within reach of process.   That process is enforceable by fine for contempt of court and by imprisonment of its officers and agents; citing: Spelling on Priv. Cor. Sec. 935, 937, 565; Eureka Lake & Yuba Canal Co. v. Superior Court Yuba Co. 66 Cal. 311, 5 Pac. 490; State ex. rel. Brumby v. Jessup Paper Co. (Del.) 30 L. R. A. (N. S.) 290, 77 Atl. 16; 3 Cook on Cor. Secs. 755, 756, 757, 758 note 2; Sec. 615; Prince Mfg. Co. v. Prince's etc., Co., 51 Hun (N. Y.) 443; Williams v. Hintermeister, 26 Fed. 889; U. S. v. Memphis, etc., R. R. 6 Fed. 237; 2 Daniell, Ch. Pr. p. 1052; Ang. & Ames Cor. Sec. 667; Reid v. Northwestern Ry. 32 Pa. St. 257; State, Templin v. Farmers, 7 Ohio C. C. 429; cited in note to Weihenmeyer v. Bitner (Md.) 45 L. R. A. 456; Huylar v. Cragen Cattle Co. 40 N. J. Eq. 392; Crown Coal & Tow Co. v. Thomas, 60 Ill. App. 234; Bay State Gas Co. v. State, 4 Penn. (Del.) 497, 56 Atl. 1120; Julescourt v. Pan. Am. Co. 5 Penn. (Del.) 391, 61 Atl. 398; Cook on Cor. (6th ed.) Sec. 615; Richardson v. Swift, 7 Houst. (Del.) 137; Schondelmeyer v. Columbia etc. Co. (Pa.) 69 Atl. 49; People v. Knickerbocker T. Co. 38 N. Y. Misc. Rep. 446; National etc. Co. v. Van Emden, 120 N. Y. App. Div. 746.

That under such an incorporation, "the principal place of business" is the place, outside of the state of incorporation, where

the business is actually carried on; citing: Tiffany v. La Plume Condensed Milk Co., 141 Fed. 444 (445).

That Sec. 784, Civ. Code, requires the annual report to be filed and published only at the place "where the business of said corporation is carried on." It in substance alleged that defendant does not transact business within South Dakota; it follows that the place where its business is carried on is outside of the state; this conclusion is inevitable, since the charter issued under Ch. 104, Laws 1907, the law which provides for a corporation not carrying on business in South Dakota. Furthermore, the statute provides for its own penalty, which is upon the officers who failed to publish the report, and presumably that remedy is intended to be exclusive; citing:

Baker v. Backus, 32 Ill. 79 (109); That failure to make and publish such report is not ground for forfeiture of charter; citing: 5 Thomp. on Cor. Sec. 6620.

That Courts should not decree forfeiture of corporate franchises unless there has been grave, repeated and wilfull violation of statutes clearly prohibiting the acts done, or expressly commanding the acts omitted, and denouncing profeiture or charter, not merely penalties against corporate officers; and when there is no other judicial remedy; citing: 5 Thomp. on Cor. Sec. 6618, page 5227; State ex. rel. Johnson v. Southern etc. Assn. (Ala.) 31 So. 375; State of Minn. v. Thresher Mfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510; High on Extr. Rem. Sec. 649; State v. Trust Co. 140 Ala. 610 (620); Frost, on Inc. & Organ. of Cor. Sec. 115, p. 158; people v. North River Sugar Refining Co. 121 N. Y. 582 (608-11).

That courts will not forfeit a charter merely because the corporation *was incorporated in one state and all its officers and stockholders reside in another state; nor because it keeps its books out of the state, in violation of the statute;* citing: 2 Cook on Cor. Sec. 633; North etc. Stock Co. v. People, 147, Ill. 234.

That the certificate of incorporation is conclusive evidence as to the location of the principal place of business; citing: Transportation Co. v. Schue, 19 N. Y. 408.

Respondent cited:

Laws 1907, Ch. 104, Secs. 1, 7; Sec. 780, Rev. Civ. Code, as amended by Sec. 6, said Ch. 104; Sec. 784, Civ. Code, as amended

by Laws 1907, Ch. 104, Sec. 6; Const. Art. 17, Sec. 4; Secs. 594, 681, Am. Code; Sec. 440, 445, 478, Civ. Code; Secs. 216, 217, Code Civ. Proc.; and cited:

Mullen v. Northern Accident Ins. Co. 26 S. D. 402; Chap. 118, Laws 1909; State ex rel Childs v. Park & Nelson Lumber Co. (Minn.) 59 N. W. 1048.

Respondent submitted that:

"A corporation created and organized under the laws of this state which fails for more than six months to keep its general offices for the transaction of business within this state * * * forfeits its charter"; quoting from State ex rel Safford, county attorney, v. Topeka Water Co. (Kan.) 52 Pac. 422.

"It is the duty of the corporation to keep its principal place of business, its books and records, and its principal offices within the state to an extent necessary to the full jurisdiction and visitorial powers of the state and its courts and the efficient exercise thereof, in all proper cases which concern the corporation, both at common law and by implication of the statutes, and failure to do so is ground for forfeiture of the charter," quoting from State v. Milwaukee L. S. & W. R. Co. 45 Wis. 579.

"It has been held, without reference to any express provision of law or specific requirement of the charter, that it is the duty of the corporation to keep its principal place of business, its books and records, and its principal offices, within the state which incorporated it, to an extent necessary to the fullest jurisdiction and visitorial powers of the state and its courts, and the efficient exercise in all proper cases which concern said corporation," quoting from Simmons v. Norfolk & B. Steamboat Co. (N. C.) 18 S. E. 117.

"The principal office of a corporation is the place where its stockholders usually meet, where it elects its officers and conducts its financial operations. * * * These things were done at Norfolk. * * * These facts establish unquestionably that the place of the principal office of the company was at Norfolk," quoting from Friek v. Norfolk & O. Ry. Co. 86 Fed. 729.

That this action is not for the private relief of Kremer. He performed his duty when, by affidavit, he laid the facts before the states attorney of Beadle county, and furnished security for costs. He became a party because, under the statute, it became the duty

of the state attorney to join his name with that of the state. When the circuit court of Beadle county granted leave to bring this suit and the state's attorney had commenced it, there could be no turning back. Leave, once granted, cannot be revoked; and cited:

People v. Ballard, (N. Y.) 32 N. E. 54; 2 Spelling Ex. Relief, 1449.

That a corporation cannot be non-resident of the state which creates it; citing: Kirkland v. Hatchkiss, 100 U. S. 491; Aspinwall v. Ohio, etc. R. R. Co. (Ind.) 83 Amer, Dec. 333; Bank of Augusta v. Earl, 13 Peters 519.

SMITH, J. This action is prosecuted on behalf of the state for the purpose of vacating articles of incorporation and to annul and forfeit the franchise of the defendant, a South Dakota corporation. The complaint sets out four grounds upon which such relief is demanded: First, that one Nelson, then assistant secretary of state, conspired with the other incorporators of said defendant company to usurp the name of a then existing corporation bearing the same name as the defendant corporation, which usurpation was wrongful and fraudulent, and against the public welfare, and a fraud upon the state; second, that for the purpose of defrauding the state, and of placing the papers and documents of said corporation beyond the reach of the process of the courts of this state, and preventing the state from exercising its authority to examine the officers and stockholders of the corporation under oath, the said Nelson, immediately after the organization of said corporation, resigned as a director thereof, and that, since said resignation, there has been no resident or citizen of this state upon said board of directors, thereby depriving this state of the right to exercise visitorial power and supervision over it; third, that defendant has failed to make annual reports required by the laws of this state; fourth, that the defendant has never maintained any office or other place for the transaction of business, or transacted any business, within this state.

Defendant demurred to the complaint upon the grounds, first, that it does not state facts sufficient to constitute a cause of action; second, that there is a defect of parties plaintiff, in that no cause of action is stated in favor of the plaintiff Frederick B. Kremer; and, third, that there is a defect of parties defendant, in that the officers and directors of the defendant are not made parties to

the action. From an order overruling the demurrer, defendant appeals.

[1] In the title of the action it purports to have been brought upon the relation of A. A. Chamberlain, as state's attorney within and for Beadle county, and Frederick B. Kremer. The allegation of the complaint, however, is that the action is brought upon the relation of A. A. Chamberlain, as state's attorney of Beadle county; leave of court to begin the action first having been granted. So far as the question of jurisdiction is concerned, the allegations as to Kremer's interest as relator are wholly immaterial. He is alleged to have been a stockholder of the corporation whose rights and franchises are claimed to have been usurped by the defendant corporation. We cannot consider or determine in this action his individual legal rights or his alleged wrongs.

Section 574, Code Civ. Proc., provides that, when an action for the forfeiture of the charter of a domestic corporation shall be brought on the relation of a person having an interest in the question, the name of such person shall be joined with the state as plaintiff, and the state's attorney may require a bond for costs. The interest of the relator, under this statute, is one peculiar to this class of actions. The only "question" involved in the action is whether or not the corporation has done, or has failed to do, any act which in law constitutes a ground for the annulment of its charter or articles of incorporation. Section 571, Code Civ. Proc. prescribes five distinct grounds upon which such action may be founded, and these grounds are not enlarged or otherwise affected by the fact that a private person is joined as relator with the state, which is the real plaintiff in the action and the particular interest which the relator may have in the question is immaterial, as the only judgment which can be entered in the action is a judgment for forfeiture or annulment of the corporate charter.

[2] The third ground of demurrer is without merit. It is not necessary that the officers and directors of a corporation be made parties to an action for forfeiture of its franchise on the ground that it has failed to comply with express provisions of statutory law.

[3] The action was begun in Beadle county, by the state's attorney of that county, upon leave granted by the circuit court, and service of process had upon the resident agent of the cor-

poration in Hughes county; the latter county being in a different circuit. Upon motion of appellant the venue of the action was changed to Hughes county. Appellant's counsel strenuously urge that the circuit court of Beadle county was without jurisdiction of the subject-matter of the action, for the reason that the circuit court of Hughes county, being the county in which the domiciliary office of the company is established by the company's charter, and in which its resident agent resides, is given exclusive jurisdiction in this class of actions, and that the action could be begun only by the state's attorney of Hughes county, upon leave granted by the circuit court of the circuit in which that county is situated, and for these reasons that the circuit court of Hughes county did not acquire jurisdiction of the subject matter of the action by reason of the change of venue.

Section 571, Code Civ. Proc., provides:

"An action may be brought by any state's attorney, in the name of the state, on leave granted by the circuit court, or judge thereof, for the purpose of vacating the charter or the articles of incorporation, or for annulling the existence of a corporation other than municipal, whenever such corporation shall," etc.

Section 572:

"Leave to bring the action may be granted upon the application of any state's attorney; and the court or judge may, at discretion, direct notice of such application to be given to the corporation or its officers, previous to granting such leave, and may hear the corporation in opposition thereto."

We think it entirely clear that under these statutes such an action may be begun by the state's attorney of and in any county in the state upon leave of the circuit court or the judge of that court, and that when so brought such court has jurisdiction of the subject-matter of the action. It follows that the court to which a change of venue in such an action was properly taken acquired like jurisdiction of both the parties and the subject-matter. We do not believe the Legislature of this state intended to limit the right to bring or the jurisdiction of such an action to the state's attorney or circuit court or judge of a single county in which a corporation may elect to locate its principal place of business or its agent for the service of process. Whether the service of process upon the appointed agent of the corporation, or an officer.

resident at its principal place of business, in a county other than that of the residence of its agent or officers of the corporation or its domiciliary place of residence, confers the legal right to a change of venue under our practice statute, we are not called upon to decide, for the reason that the change of venue in this case was granted upon appellant's own motion, and it cannot now question the regularity of the order or the jurisdiction of the court over it as a party to the action.

[4] We deem it unnecessary to review the ingenious and elaborate argument and the citations of authorities to sustain appellant's contention that the state's attorney of Beadle county was without authority to apply for leave to begin the action, and that the state's attorney of the county in which the domicile, or principal place of business, of the corporation defendant is situated, is given such exclusive authority. An action to forfeit a corporate charter can only be brought by or on behalf of the state, and under the provisions of section 928 of the Political Code defining the duties of a state's attorney he is authorized to prosecute such action, in any county to which it may be removed by change of venue. These views are entirely consistent with the decision in Mullen v. Northern Accident Insurance Co., 26 S. D. 402, 128 N. W. 483, in which we held that:

"Unless otherwise prescribed by statute, a domestic corporation, for the purpose of being sued, is a resident of the county where its principal place of business is located, and suits against it should be brought in such county."

That action was brought on a policy of accident insurance, and it was held that subdivision 5, § 99, of the Code of Civil Procedure, providing that an action brought on a policy of insurance to recover for loss or damage to property insured shall be begun in the county or judicial subdivision where such property is situated at the time of such loss or damage, did not apply to suits on accident policies insuring against accidents to human beings, for the reason that there was nothing in the statutes of this state expressly requiring actions of this character to be brought in the county where the cause of action arose.

Appellant's most serious contention appears to be that the complaint does not allege facts upon which a forfeiture should be adjudged in the exercise of the court's discretion or otherwise.

[5] The real question presented is whether the failure of the defendant corporation to comply with the requirements of the statutes relating to domestic corporations transacting business within the state may be a ground for forfeiture of the chapter of a domesitc corporation transacting business wholly in a foreign jurisdiction. Appellant's counsel, we think, in effect concede that the failure of a strictly domestic corporation to comply with the state statutes in the matter of making annual reports required by statute, and which requires it to have its main office for the transaction of its business in the state, might be a sufficient ground for forfeiture of the charter of such domestic corporation. Their contention is that corporations which are authorized under section 3 of the act of 1907, to establish offices for the transaction of business within and which carry on their business wholly within, a foreign jurisdiction, need not comply with the requirements exacted of strictly domestic corporations. As stated in appellant's brief, the contention is that—

"This resident agent law creates a new class of domestic corporations—a quasi nonresident domestic corporation."

The defendant was incorporated pursuant to the provisions of section 780, Civil Code, as amended by section 6, c. 104, Laws of 1907, which reads:

"Corporations for mining, manufacturing and any other business pursuit, may be formed as provided in this Code, and such corporations have all the rights, and are subject to all the duties, restrictions and liabilities therein mentioned, so far as the same apply or relate to such corporations. * * *"

Section 3 of the same act, referred to as "the resident agent law," provides:

"Every corporation of this state which is not doing or carrying on business within this state, shall appoint a resident agent, who shall reside at the place of business or domiciliary office of such corporation in this state designated in the articles of incorporation, and such resident agent may be one of the officers of the corporation, and service of legal process upon such agent shall constitute legal and valid service upon such corporation: Provided, that nothing in this section shall be construed to invalidate service of process upon any resident officer of such corporation or upon its managing agent residing within this state, and service of such

process upon any such resident officer or agent shall be and constitute legal service upon such corporation."

It will be seen that section 7, c. 104, Laws 1907, amending section 786, Civil Code, enlarges the scope of the section to include "any corporation created under the general incorporation laws of this state," but does not change the provision of the section that—

"Every such corporation having a business office out of this state, must have its main office for the transaction of business, within this state," etc.

This clause of the section cannot, without doing violence to its plain language, be construed to intend only incorporations transacting business in the state, as it plainly refers to "corporations having a business office out of this state," and therefore includes corporations referred to in section 3, c. 104, Laws 1907. We are of the view that the Legislature intended to require every corporation organized in this state, to maintain its "main office" within the state, but with authority to establish branch offices, at which it may exercise its corporate powers, in other states. We are also of the view that section 3, supra, which requires the appointment of a resident agent by domestic corporations not doing or carrying on business within the state, and which requires a designation of the residence of such agent in the articles of incorporation, was intended to locate a place at which such agent can be found for the service of process, and that such residence may be either at the place of business of the corporation, or at its domiciliary office; the latter being the place of residence of the agent.

We think the policy of our statute is well expressed in the case of State v. Milwaukee, L. S. & W. R. Co., 45 Wis. 579. That court said:

"It is the duty of the * * * corporation to keep its principal place of business, its books and records, and its principal offices, within the state, to an extent necessary to the * * * jurisdiction and visitorial power of the state and its courts, and the efficient exercise thereof in all proper cases which concern said corporation," both at common law and by implication of the state statutes, and failure to do so is ground for forfeiture of the charter.

[6] The neglect or refusal of a corporation to perform the duties enjoined by the charter need not proceed from a bad or corrupt motive even. It is enough if they be designedly omitted. People v. Kingston Road Co., 23 Wend. (N. Y.) 193, 35 Am. Dec. 551, note.

"The state is not required to prove an actual injury to the public. It is sufficient if the act be such as in the nature of things is calculated to produce such injury. People v. Live. Stock Exchange, 170 Ill. 556 [48 N. E. 1062] 62 Am. St. Rep. 404, 39 L. R. A. 373; State v. Central Lumber Co., 24 S. D. 136 [123 N. W. 504] 42 L. R. A. (N. S.) 804; 7 R. C. L. 717, p. 712. If an act or omission is expressly declared to be a cause of forfeiture of a charter of a corporation a judgment of forfeiture must necessarily follow in accordance with the expressed legislative intent, whatever the act or omission may be, though it would seem that even in this case there must be willful abuse or improper neglect, unless a contrary intention is manifested. * * * Undoubtedly the breach of conditions expressly imposed upon the corporation for the benefit of the public, though there is no express provision for a forfeiture in case of default, may be ground for a forfeiture; a nonperformance of such conditions is deemed per se a misuser that will forfeit the grant at common law. * * * So the duty imposed upon corporations to make annual reports to public officers of their financial condition is not simply one in which particular persons are alone interested, but it is a duty which the corporation owes to the public generally for the protection of all persons who may have occasion to deal with it, and to subserve a plainly expressed public policy; and for the omission to perform the duty it incurs the liability of forfeiture of its charter." 7 R. C. L. § 721, p. 714; People v. Buffalo Stone Co., 131 N. Y. 140 [29 N. E. 947] 15 L. R. A. 240.

In People v. Kingston T. R. Co., 23 Wend. (N. Y.) 193, 35 Am. Dec. 551, Chief Judge Nelson says:

"The hardship of exacting from corporations a fulfillment of all the requirements of the charter has been urged upon us; but the appeal is made to the wrong forum. That is a question to be settled with the Legislature that prescribed them. It is not for courts to say one condition is material, and must be performed on pain of forfeiture; and another is unimportant, and may be

dispensed with, or enforced by indictment or pecuniary penalty. Where shall we draw the line? The statute makes no such distinction; if corporations offend against 'any of the provisions of the act or acts creating' them, the information may be filed, and judgment of ouster rendered. * * * If the condition is onerous, and unessential to the purpose of the charter, relief is plain, and at hand; the Legislature will repeal it. While it remains on the statute book we are to presume it was deemed material by those who had a right to judge of the matter, and should be enforced. I speak now of express conditions; where they are implied, and of course, undefined, except by construction of law, a more indulgent consideration may well be given; we are not then tied down to the letter of the statute. Their materiality to the great end of the institution may be regarded, and enter into the judgment of the court."

We have examined with care every assignment of error, but deem it unnecessary to discuss any questions other than those to which we have referred.

The order of the trial court is affirmed.

POLLEY, J. (dissenting). I am unable to agree with the conclusion reached by the majority of the court in this case. While I do not approve of the law, nor of the principle involved in the law, under which the defendant acquired its corporate existence, I do think the defendant has kept strictly within the purview of that law, and that the wrong that exists should be righted, so far as possible, by repeal of the law, to the end that this state may no longer be the resort for a cloak of authority to those who wish to prosecute their enterprises in other states. It is a matter of public record that hundreds, if not thousands, of corporations are doing business in other states under authority of franchises issued by this state. Prior to the enactment of chapter 104, Laws of 1907, the law contemplated that corporations chartered in this state were to carry on their business operations in this state. They were authorized to do business outside the state and corporations for mining, manufacturing, and other industrial pursuits were allowed to establish branch offices outside the state, where certain business might be transacted; but they were all required to have their main office for the transaction of business within the state. Section 786, Civ. Code. One-third of the incorporators and one-

third of the officers were required to be residents of this state. Sections 404 and 410, Civ. Code. But by chapter 104, Laws of 1907, these sections were amended so that only one of the incorporators and one director need be a resident of this state, and no requirement at all is made relative to the officers. These changes, while material, are not radical. But, by section 3 of said act, the whole policy of the law relative to corporations was changed. This section reads as follows:

"Sec. 3. *Resident Agent.*—Every corporation of this state which is not doing or carrying on business within this state shall appoint a resident agent, who shall reside at the place of business or domiciliary office of such corporation in this state designated in the articles of incorporation, and such resident agent may be one of the officers of the corporation, and service of legal process upon such agent shall constitute legal and valid service upon such corporation. Provided, that nothing in this section shall be construed to invalidate service of process upon any resident officer of such corporation or upon its managing agent residing within this state, and service of such process upon any such resident officer or agent shall be and constitute legal service upon such corporation. Such appointment of a resident agent shall be made in writing, signed by the president or secretary of the corporation, and duly acknowledged, and shall be filed in the office of the secretary of state, but such resident agent may be appointed in the articles of incorporation of such corporation. A fee of five dollars ($5.00) shall be paid by such corporation to the secretary of state for filing such appointment of resident agent, in all cases where such agent is not appointed in the articles of incorporation of the corporation."

This section contemplates the creation of a corporation that, to all intents and purposes, is a foreign corporation. As a requisite to the right to engage in business in this state, a foreign corporation is required to appoint a resident agent upon whom service of a process may be made. Said section 3 requires domestic corporations that do not intend to do buisness within this state to appoint a resident agent upon whom service may be made, and the whole purport of said section is that it shall not be necessary to keep any other officer or agent within the state. By the provisions of section 786, Civil Code, a domestic corporation is re-

quired to keep its main office for the transaction of business within the state, yet in section 3, chapter 104, Laws of 1907, we find a resident agent is required to reside at the place of business or domiciliary office of such corporation. Clearly the meaning of these two sections, when taken together, is that, where a corporation is organized for the purpose of doing business outside the state, it is necessary to maintain only a domiciliary office with a resident agent upon whom service of process may be made. If it were intended that the corporation should maintain its principal place of business, and that its officers and directors should reside within the state, the maintenance of a domiciliary office and a resident agent would be altogether superfluous. That it was the intent of the Legislature, in passing said act, to authorize the creation of corporations that should in effect be foreign corporations, is further shown by the provision in said section providing for the naming of the resident agent in the articles of corporation.

In their brief, counsel for respondents say:

"Corporations are either domestic and resident, or they are foreign and nonresident. There is, and can be, no 'twilight zone' in which a corporation can, at one and the same time, claim and enjoy all the protection, and all the immunities, accorded by our statutes to resident and domestic corporations, and escape all control, supervision and accountability, as completely as foreign corporations. * * *"

Yet this is exactly what the Legislature did, and what it intended to do by the enactment of this legislation. Of course it was not intended that such corporations should escape control, supervision, or accountability. The purpose of maintaining the resident agent in the state was to keep such corporations within the jurisdiction and under the control and supervision of the courts of the state. Said act was intended as an invitation to people from other states to take advantage of the very liberal incorporation laws of this state and to come to this state to secure their corporate charters to engage in various enterprises in other states. It is a matter of public record and general information that this invitation was acted upon, and the result has been that this state, for the past 10 years, has fairly spawned corporations

and sent them broadcast over the land. The only requirement or limitation is that, by maintaining a resident agent, such corporations shall submit to the jurisdiction of the courts of this state.

If this be a correct interpretation of our incorporation statutes, then the defendant has violated no law of this state and is guilty of no offense; and certainly is guilty of no offense that warrants its destruction by a decree of court. The incorporators accepted the invitation that was sent broadcast by the state and came here to secure a charter. It is not claimed that such corporation has not at all times maintained a domiciliary office and a resident agent in the state, nor that it has ever violated or refused to obey the order or decree of any court of this state.

It is alleged, as a ground for dissolution, that defendant has not published the annual reports required by the provisions of section 784, Civil Code; but it is not contended that any demand for such report has ever been made, or that the rights of any interested party have been imposed upon by the failure of defendant to publish such reports. It is also alleged that none of the books, papers, or documents of defendant are, or have been, kept in this state, or within the reach of summary process issued by the courts of this state, and that, because of that fact, this state is deprived of its rights to exercise visitorial supervision or control over it. This contention is well answered by what is said by the Supreme Court of Illinois, in North & South R. S. Co. v. People, 147 Ill. 234, 35 N. E .608, 24 L. R. A. 462. In that case all the officers and directors of an Illinois corporation resided in and kept all the books and records of such corporation in the state of Missouri, and upon that point the court said:

"It is true that keeping its books for most of the time in St. Louis may not be a strict compliance with the statute in that behalf, but it does not appear that any interest, either public or private, has been or is likely to be imperiled or incommoded thereby."

And, along this same line, the court further said:

"The thirteenth section of the statute under which the defendant was incorporated provides that it shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this state correct books of account of all its business, and every stockholder in such

corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation. It would seem that the primary object of this statutory provision is to protect the rights of stockholders, and the evidence is positive that, whenever a stockholder has desired to examine the books at that place, they have been produced there for his examination. It is probable that the statute may have had other objects in view in requiring the books to be kept at the principal office in this state, as, for instance, to aid the state in exercising its visitorial power over the corporation, or perhaps to enable creditors of the several stockholders to ascertain the number of shares of stock standing in the names of each, so as to levy their executions or attachments thereon; but there is no reason to suppose that the books would not have been instantly produced whenever required for either of those purposes.

"It is not every failure to comply with the exact letter of the statute which will expose a corporation to the loss of its franchises. In determining whether such departure from the provisions of the act of incorporation has occurred as will work a forfeiture, the same general principles of construction are applicable which govern valuable grants to individuals upon conditions subsequent or precedent. In all such cases, a substantial performance of the conditions, according to the intent of the charter, is all that is required, and slight departures are overlooked. High. on Extra. Leg. Rem. § 651."

And in State v. Thresher Mfg. Co., 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510, the Minnesota court said:

"To constitute a misuser of the corporate franchise, such as to warrant its forfeiture, the ultra vires acts must be so substantial and continued as to amount to a clear violation of the condition upon which the franchise was granted, and so derange or destroy the business of the corporation that it no longer fulfills the end for which it was created. But, in case of excess of powers, it is only where some public mischief is done or threatened that the state, by the Attorney General, should interfere. If, as between the company and its stockholders, there is a wrongful application of the capital, or an illegal incurring of liabilities, it is for the stockholders to complain. If the company is entering into contracts ultra vires, to the prejudice of persons outside the cor-

poration, such as creditors, it is for such persons to take steps to protect their interests. The mere fact that acts are ultra vires is not necessarily a ground for interference by the state, especially by quo warranto to forfeit the corporate franchises."

It is not claimed that the public has been, or is likely to be, injured in any manner by any act, or threatened act, of defendant. It is not claimed that the plaintiff Kremer has any grievance against the defendant, and, if he had such grievance his counsel frankly admit that a court of equity could afford him adequate relief. But, if his own statement of the case correctly represents the facts, he has no standing in a court of equity. According to his showing, he, with other residents of Minnesota, came to this state to secure a corporate franchise for the purpose of doing business in that state, but with no intention of complying with the laws of this state. So long as the management of the affairs of the corporation accorded with his views, he was satisfied to accept his share of the benefits of the unlawful venture; but, when the time came that he was not able to agree with the majority of those in control of the affairs of the corporation, he proceeded to wreck the enterprise and invoked the aid of a court of equity for that purpose. He should have been given no consideration whatever.

It is not shown that anything done by defendant in the past has been or is likely to be detrimental to any interest, either public or private, and no useful purpose would be served by a dissolution of the corporation.

Defendant's demurrer to the complaint should have been sustained.

