THE DEPARTMENT OF REVENUE, Plaintiff-Appellee, *v.* OLYMPIC
SAVINGS & LOAN ASSOCIATION, Defendant.—(JOHN KITSOS, Defendant-
Appellant.)

First District (2nd Division)   Nos. 78-294, 78-637 cons.

Opinion filed November 13, 1979.

Nicholas T. Kitsos, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Gregory G. Lawton, Assistant
Attorney General, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This appeal is from an order of the circuit court of Cook County
directing a savings and loan association to comply with an administrative
*subpoena duces tecum* issued by the Illinois Department of Revenue

commanding the savings and loan association to produce certain records relating to the financial affairs of one of its customers. The sole issue presented for review is whether the trial court erred in entering an order enforcing the administrative subpoena.

For the reasons hereinafter set forth, we reverse and remand to the circuit court for proceedings not inconsistent with this opinion.

On April 5, 1977, the Illinois Department of Revenue (hereinafter referred to as the Department) issued a *subpoena duces tecum* commanding Olympic Savings and Loan Association (hereinafter referred to as Olympic) to appear at a hearing in the office of the Department at a specified date with certain books and records of Olympic relating to the State income tax liability of John Kitsos.[1]

The records described in the subpoena were "[a]ll records in connection with a mortgage on the property at 326 Stafford Way, Bolingbrook, Illinois, dated March 6, 1973, granted to Olympic Savings and Loan Association by Alice and John Kitsos, including but not limited to, the loan application, financial statements, amount of loan, and record of payments." Notice of the issuance of the subpoena and of its service upon Olympic was sent by certified mail to Kitsos. Kitsos, in turn, informed Olympic that its voluntary compliance with the subpoena would be at the risk of a lawsuit brought by him. Olympic thereupon did not voluntarily comply with the subpoena, and the Department filed suit on May 10, 1977, seeking judicial enforcement of its subpoena.

The Department's complaint to compel compliance with the subpoena alleges that Kitsos had a duty to pay State income tax; that because of Kitsos' failure and refusal to file income tax returns setting forth his full income, the Department made a demand upon Kitsos to examine his books, papers and records for the purpose of administering and enforcing the provisions of the Income Tax Act (hereinafter referred to as the Act); that Kitsos refused to comply with the Department's demand and further refused to disclose either his income or the source(s) thereof; that Olympic had in its possession records which would aid the Department in establishing Kitsos' tax liability; that an administrative *subpoena duces tecum* had been served upon Olympic; that Olympic had not voluntarily complied with the subpoena; and that a judicial order is necessary to enforce the administrative subpoena.

Kitsos and Olympic were joined as defendants. Olympic filed its answer requesting that the court conduct a hearing in which Kitsos would be given an opportunity to contest the issuance of the subpoena. Kitsos filed an answer which can best be characterized as Kitsos himself chose to characterize it in his brief. "[T]he answer consisted of 82 paragraphs and

---

[1] The subpoena does not indicate to which years the investigation pertains. The record, however, reveals that the investigation pertains to the years 1973 through 1976.

denied each and every allegation of the complaint and generally raised a full scale attack upon the constitutional validity of the federal and state income tax laws, the procedures followed by the defendant [the Department], the deprivation of constitutional rights including the right to be free from self-incrimination and alleged that the Illinois Income Tax Laws are dependent upon the validity of the federal income tax laws and that the federal income tax laws were invalid. * * *" After a trial on the merits, the court denied Kitsos' motion for judgment on the pleadings and ordered Olympic to comply with the *subpoena duces tecum.*

Kitsos alone prosecutes this appeal. He contends that "the enforcement of the income tax subpoena to further an investigation solely for criminal purposes violates the taxpayer's constitutional and statutory rights." In this attack, Kitsos essentially maintains that "the use of such subpoena in aid of a criminal investigation was bad faith and not permissible." It appears that it has been Olympic's position throughout these proceedings that it will readily comply with the subpoena upon court order and final resolution of this dispute.

On May 11, 1978, after all briefs were filed but prior to oral argument, Kitsos filed motions in the appellate court requesting that the appellate court summarily reverse the judgment of the trial court and quash the subpoena. The Department objected to these motions. The motions and objections allege the following facts which substantially change the posture of the case. On April 13, 1978, criminal proceedings were instituted against Kitsos in the circuit court of Will County wherein Kitsos was charged with the crime of fraudulently failing to file income tax returns for the years 1976, 1977 and 1978. In his motions, Kitsos contends that "the obtaining of said records by the State of Illinois Department of Revenue, Appellee, in this case by subpoena, in any event and irrespective of any issues in this cause, would constitute the use of civil process in aid of a criminal proceeding which would violate the constitutional rights of the Defendant in said criminal proceeding." The Department replies that the "criminal proceedings instituted by the Department are not related to the tax years involved in the instant appeal, with the exception of tax year 1976." Moreover, the Department alleges that "the criminal charges filed April 13, 1979, included 1976, because the Statute of Limitations, Ill. Rev. Stat., (1977), Ch. 120, §13—301 [*sic*], would have barred the 1976 claim after April 15, 1979." The Department maintains that "[t]he appeal process may not be used to thwart civil or criminal proceedings against a taxpayer" and that "[u]nder these circumstances, the obtaining of the records by means of the subpoena does not constitute the use of civil process in aid of a criminal proceedings in violation of taxpayer's constitutional rights." On June 26, 1979, we denied Kitsos' motion for summary reversal and motion to quash the

subpoena. During oral argument, Kitsos' attorney informed this court that the Department recently assessed Kitsos' tax liability.[2]

## I.

We emphasize initially that what is sought here by the Department from Olympic is the production of Olympic's records and not the records of the taxpayer Kitsos. This is not a case where a subpoena has been issued to the taxpayer himself seeking access to his books and records and information from his own mouth. Neither is it a case where the subpoena is directed at the taxpayer's records in the hands of his attorney or accountant, with the attendant questions of privilege. The subpoena was directed to Olympic to whom no established legal privilege, such as that of attorney and client, exists and concerned records in which Kitsos has no proprietary or custodial interest of any kind, which are owned by Olympic and which relate to Olympic's business transactions with Kitsos. Thus, despite intimations to the contrary, there appears to be no basis for a challenge under either the fourth or fifth amendment to the Constitution by Kitsos to the Department of Revenue subpoena issued pursuant to the Illinois State Income Tax Act and directed to Olympic Savings and Loan Association.[3]

## II.

The instant case appears to be a case of first impression in Illinois and requires us to examine the limits of the good-faith use of a Department of Revenue subpoena issued pursuant to section 916 of the Income Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 9—916). This section provides in part:

"(a) Subpoenas. The Department or *any officer or employee of the Department designated in writing by the Director*, shall at its or his own instance, or on the written request of any other party to the proceeding, issue subpoenas requiring the attendance of and the giving of testimony by witnesses, and subpoenas duces tecum requiring the production of books, papers, records or memoranda. All subpoenas and subpoenas duces tecum issued under this Act may be served by any person of full age." (Emphasis added.)

In conjunction with this subpoena power, section 916 further provides:

"(c) Judicial enforcement. Any Circuit Court of this State, or any judge thereof, upon the application of the Department or any officer or employee thereof, or upon the application of any other party to the proceeding may, in its or his discretion, compel the attendance of witnesses, the production of books, papers, records

---

[2] Kitsos' attorney did not specify which years were the subject of the assessment. Nor did Kitsos' attorney specify whether the assessment included any penalties.

[3] See *Fisher v. United States* (1976), 425 U.S. 391, 48 L. Ed. 2d 39, 96 S. Ct. 1569; *Couch v. United States* (1973), 409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611; *Donaldson v. United States* (1971), 400 U.S. 517, 522, 27 L. Ed. 2d 580, 91 S. Ct. 534.

or memoranda and the giving of testimony before the Department or any officer or employee thereof conducting an investigation or holding a hearing authorized by this Act, by an attachment for contempt, or otherwise, in the same manner as production of evidence may be compelled before said Court."

The only limitation on the face of the statute concerns the authority of an officer or employee of the Department to issue a subpoena. An officer or employee authorized to issue a subpoena must be so "designated in writing by the Director" of the Department. In the case at bar the record is totally devoid of any evidence which demonstrates that Special Agent Lynn, who issued the subpoena, was so authorized. Thus we remand the cause to the trial court for a hearing to determine whether Special Agent Lynn was duly authorized to issue a subpoena.

## III.

While section 916 on its face contains no other limitations on the issuance of a Department of Revenue subpoena, limitations consistent with other rules and concepts in our legal system must be considered. The predominant limitation is the abuse of judicial process. In *United States v. Powell* (1964), 379 U.S. 48, 58, 13 L. Ed. 2d 112, 119-20, 85 S. Ct. 248, 255, the United States Supreme Court, in an effort to prevent such abuse of judicial process, enumerated several prerequisites for obtaining judicial enforcement of an Internal Revenue Service summons. These prerequisites have been applied to Illinois Department of Revenue subpoenas. (*Department of Revenue v. Continental Illinois Bank & Trust Co.* (1975), 27 Ill. App. 3d 326, 326 N.E.2d 453.) The prerequisites for obtaining judicial enforcement of a Department of Revenue subpoena are: (1) that the administrative steps required by the Act have been followed; (2) that the investigation is being conducted pursuant to a legitimate purpose; (3) that the inquiry is relevant to that purpose; and (4) that the information sought is not already within the Department's possession.

First, as previously discussed, the record does not reflect that the administrative steps required by the Act have been followed. No evidence was presented to demonstrate that Special Agent Lynn was authorized pursuant to section 916(a) to issue a subpoena.

We now direct our attention to the second and third prerequisites, namely that the investigation is being conducted pursuant to a legitimate purpose and that the inquiry is relevant to that purpose. In *Powell* the court explained:

"It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had

been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." (379 U.S. 48, 58, 13 L. Ed. 2d 112, 120, 85 S. Ct. 248, 255.)

The abuse of process concept is predicated on the notion that the process of the court and its attendant power and authority should not be used to accomplish a purpose for which it was not intended. The essential question is what is the legislative purpose of the administrative issuance and judicial enforcement of a Department of Revenue subpoena pursuant to section 916.

■■ The Department of Revenue is authorized to collect taxes imposed by the Income Tax Act (Ill. Rev. Stat. 1975, ch. 120, pars. 1—101 through 17—1701) and is charged with the responsibility of administering and enforcing the Income Tax Act. (Ill. Rev. Stat. 1975, ch. 120, pars. 9—901 and 9—914.) The legislature, by section 904 of the Act, has required the Department to examine all returns to determine the correctness of the amount and to determine the amount due if no return is filed. With regard to willful attempts to evade or defeat any tax imposed by the Act, the duties of the Department encompass enforcement of both civil and criminal statutes. The willful attempt to evade or defraud may subject a taxpayer to criminal penalties under section 1301 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 13—1301) as well as to a civil penalty under section 1002(b) of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 10—1002(b)) equal to 50 per cent of the deficiency. Section 1002(e) of the Act provides that the civil penalty for fraud or evasion shall be considered as part of the tax liability of the taxpayer. Hence, when section 916 in conjunction with section 914[4] permits the use of a subpoena to administer and enforce the provisions of this Act, they necessarily permit the use of the subpoena for examination of suspected tax evasion and fraud and for the calculation of the 50 percent civil penalty. The statute contains no restrictions and draws no distinction between the civil and criminal aspects.

The legislature has created a law enforcement system in which the civil and criminal elements are inherently intertwined. When an investigation examines the possibility of criminal misconduct, it also necessarily inquires about the appropriateness of assessing the 50 percent civil tax penalty. Thus, it appears that the Act contemplated the use of the subpoena in an investigation involving suspected criminal conduct as well as behavior that would have been disciplined with a civil penalty. In short, the legislature has not categorized tax evasion or fraud investigations into civil and criminal components. In truth, we presume the Department would be unfaithful to its statutory responsibilities if in every

---

[4] Section 916 authorizes the issuance of subpoenas, and section 914 authorizes investigations for the purpose of administering and enforcing the Act.

examination, once an incorrect return has been demonstrated or established, it did not come to some preliminary conclusion as to whether there existed facts sufficient upon which to base a possible criminal prosecution. Any limitation on the good faith use of a Department of Revenue subpoena must reflect this statutory premise.

As the preceding discussion suggests, the primary restriction upon the use of a Department of Revenue subpoena occurs upon the recommendation by the Department to the prosecutor that criminal prosecution be instituted. Only at that point do the criminal and civil aspects of a tax fraud or evasion case begin to diverge. We recognize, of course, that even upon recommendation to the prosecutor, the civil and criminal elements do not separate completely. The State does not abandon its interest in unpaid taxes just because a criminal prosecution begins. Logically, then, the Department could use its subpoena authority to uncover information about the tax liability created by fraud or evasion regardless of the status of the criminal case. But the rule forbidding such is a prophylactic intended to safeguard fundamental principles of the criminal law.

■ It is not the function of the Department of Revenue, an administrative agency, to prosecute violators of the Income Tax Act; that is the prescribed function of the prosecutorial branch of the State government. Accordingly, once a referral for criminal prosecution is made, it would not be permissible for the prosecutor to contact the Department and request that the Department help build a stronger case against the taxpayer by obtaining additional documents pursuant to its section 916 subpoena powers and by handing such documents over to the prosecutor. It would not be permissible simply because the subpoena power was given to the Department and not to the prosecutor. Nothing in the Act suggests that the legislature intended the subpoena authority to broaden the prosecutor's right of criminal discovery or to infringe on the role of the grand jury as a tool of criminal accusation. The likelihood that discovery would be broadened is substantial if post-referral use of the subpoena authority were permitted. After referral, cooperation between the prosecutor and the Department could, as a practical matter, scarcely be avoided. It would be unrealistic to presume an information barrier between the Department and the prosecution given the inherently intertwined nature of the criminal and civil elements of the case. Undoubtedly, information unearthed by the Department in its attempt to establish civil liability would inevitably affect the criminal discovery process used by the prosecutor.[5]

---

[5] We cannot deny that the potential for expanding the criminal discovery exists even prior to a referral for criminal prosecution. But we think the possibilities for abuse of these principles are less likely before the referral takes place and do not justify imposing a ban on the use of the subpoena before that point. Earlier imposition of the ban, given the balance of principles and civil law enforcement interests, would unnecessarily hamstring the performance of the tax determination and collection functions by the Department.

We know of no instance where the legislature has in criminal matters vested the executive with unrestricted subpoena power to uncover information in preparation of a matter which has already been referred to the prosecutorial branch for criminal prosecution. The use of an administrative warrant for the purpose of gathering evidence in a criminal case will face stern resistance by the courts. The preliminary stages of criminal prosecution must be pursued in strict obedience to the safeguards and restrictions of the Constitution and the laws of Illinois. To permit the use of an administrative subpoena as a device to aid the prosecutor in the preparation of a criminal case would sanction perversion of a statutory power, would be to use the process and authority of the court in a manner in which it was not intended. This prophylactic restraint on the use of the subpoena effectively safeguards these fundamental principles. We conclude that judicial enforcement of the Department of Revenue subpoena, to the extent that the Department sought information pertaining to Kitsos' income for the year 1976 (one of the years included within the scope of the criminal prosecution), is in error.

Finally we direct our attention to the last prerequisite, namely, that the information sought is not already within the Department's possession. During oral argument Kitsos' attorney advised this court that the Department had levied a tax assessment against Kitsos subsequent to the filing of the briefs in this appeal. If the Department has in fact assessed Kitsos' tax liability, we question whether the information sought is not already within the Department's possession. Thus we remand this cause for a hearing to determine whether the assessment obviates the necessity for judicial enforcement of the subpoena.

Several procedural errors were suggested by Kitsos yet not briefed nor argued. We find these suggestions of error to be without merit.

Accordingly, the judgment of the circuit court ordering Olympic Savings and Loan Association to comply with a *subpoena duces tecum* issued by the Illinois Department of Revenue is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.