(Nos. M.R. 2517, M.R. 2536, M.R. 2552
cons.—)

*In re* SHELDON OLIVER ZISOOK, Attorney, Respondent.—*In re* JEFFREY A. BRODY, Attorney, Respondent.—*In re* BASIL CHRIS ELIAS, Attorney, Respondent.

*Opinion filed December 4, 1981.—Rehearing denied January 29, 1982.*

322

Jerome Larkin and John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte and David J. Walker, of Chicago, for respondents.

JUSTICE RYAN delivered the opinion of the court:

These disciplinary cases concern the scope of an attorney's fifth amendment privilege against incriminating himself during proceedings before the Attorney Registration and Disciplinary Commission. The attorneys, Sheldon Oliver Zisook, Jeffrey A. Brody and Basil Chris Elias (respondents), received subpoenas to testify concerning certain matters issued at the request of the Attorney Registration and Disciplinary Commission (Commission). The

*subpoenas duces tecum* received by Zisook and Elias also requested the production of certain documents. Each respondent, through his attorney, informed the Commission that he believed such testimony or the production of materials to be self-incriminating and thus failed to appear before the Commission at the time appointed. The Commission filed a report with this court pursuant to our Rule 754 (73 Ill. 2d R. 754). We issued a rule to show cause why the attorneys should not be suspended from the practice of law for failing to comply with the subpoenas. Each respondent answered the rule to show cause, and the cases were consolidated, briefed and orally argued before this court.

A Federal grand jury became interested in the respondents following references to them in a newspaper-television investigative article entitled "The Accident Swindlers." The grand jury was investigating possible violations of certain Federal criminal statutes.

Respondent Sheldon Zisook is an attorney licensed to practice law in Illinois. On June 17, 1970, he formed a professional corporation, Sheldon Oliver Zisook Professional Corporation. The Commission commenced an investigation of Zisook in late 1979. A *subpoena duces tecum* was issued commanding the respondent to appear before the administrator of the Commission and to produce all files and documents in his possession relating to his representation of certain named clients. The subpoena also commanded Zisook to appear and give evidence.

Following the issuance of the first subpoena, the respondent sought and obtained a continuance. During that time the respondent received a subpoena issued by the United States District Court for the Northern District of Illinois. That subpoena commanded respondent to appear before a special grand jury of that court and to produce substantially all his records and files for the preceding four years. The documents sought by the grand jury included

those already requested by the Commission.

The second respondent, Jeffrey A. Brody, is an attorney employed by Sheldon Oliver Zisook Professional Corporation. Like Zisook, he was mentioned in the television series "The Accident Swindlers" and received a *subpoena duces tecum* issued by the United States District Court for the Northern District of Illinois.

Some time later the Commission also began an investigation of Brody. It issued a subpoena requiring the respondent to appear before the Commission to give testimony. The subpoena did not require the production of documents. Brody failed to appear as commanded, claiming, as Zisook had, that to comply would result in the respondent's incriminating himself.

The third respondent, Basil Chris Elias, is an attorney apparently engaging in the practice of law as a sole practitioner. Like the other respondents, he was subpoenaed to appear before the Federal grand jury as the result of allegations against him in the aforementioned television series. Also, like Zisook, this respondent's *subpoena duces tecum* commanded him to appear before the Commission to testify and also to produce certain documents relating to his practice. He refused to do so, claiming it would be a violation of his privilege against self-incrimination.

We first consider the scope of and procedure for claiming the fifth amendment privilege as it relates to subpoenas requesting appearances in disciplinary proceedings. We conclude, as to the respondents, that while they possess the privilege against self-incrimination, refusing to appear in response to a subpoena is an inappropriate way to claim it.

The United States Constitution provides:

"No person shall be *** compelled in any criminal case to be a witness against himself ***." (U.S. Const., amend. V.)

This privilege has also been incorporated in the Illinois

Constitution. (See Ill. Const. 1970, art. I, § 10.) The privilege essentially means that no person, without proper immunity, can be required to implicate himself in a crime. *Malloy v. Hogan* (1964), 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489; *Murphy v. Waterfront Com.* (1964), 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594; see generally *Ullmann v. United States* (1956), 350 U.S. 422, 100 L. Ed. 511, 76 S. Ct. 497.

The privilege does not, however, prevent the use of information voluntarily supplied by the witness (*United States v. Weber* (3d Cir. 1970), 437 F.2d 327, *cert. denied* (1970), 402 U.S. 932, 28 L. Ed. 2d 867, 91 S. Ct. 1524; *People v. Jackson* (1970), 130 Ill. App. 2d 170) or information supplied by a third party. It has long been recognized that the privilege extends to private papers as well as oral testimony. (*United States v. White* (1944), 322 U.S. 694, 88 L. Ed. 1542, 64 S. Ct. 1248; *Boyd v. United States* (1886), 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524.) These constructions of the privilege have developed in the context of criminal proceedings. In the cases at bar, however, the privilege is being claimed in disciplinary proceedings.

Such proceedings are typically considered to be *sui generis* or quasi-criminal. (*In re Ruffalo* (1968), 390 U.S. 544, 551, 20 L. Ed. 2d 117, 122, 88 S. Ct. 1222, 1226.) Older interpretations of the fifth amendment restricted its application to purely criminal, as opposed to noncriminal matters. It has not been until more recently that the emphasis regarding applicability has switched to the nature of the statement and resulting sanctions rather than focusing on the nature of the proceeding. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) Fifth amendment protection has been extended to statements made in the course of disciplinary proceedings. (*Spevack v. Klein* (1967), 385 U.S. 511, 17 L. Ed. 2d 574, 87 S. Ct. 625.) See generally Underwood, *The Fifth Amendment and the Lawyer,* 62 Nw. U.L. Rev. 129 (1967); Black, *The Supreme Court,* 1966 Term, 81 Harv. L. Rev. 69, 200 (1967-68);

*Discussion of Recent Decisions,* 44 Chi.-Kent L. Rev. 63 (1967); *Recent Decisions,* 18 Syracuse L. Rev. 861 (1967).

In *Spevack,* a disbarment proceeding was brought against a member of the New York bar, on a charge of refusing to honor a *subpoena duces tecum.* The attorney had refused to produce the demanded financial records and refused to testify. His sole defense was that the production of the records and his testimony would tend to incriminate him. The Appellate Division of the New York Supreme Court ordered the petitioner disbarred, holding that the constitutional privilege against self-incrimination was not available to him as a lawyer. The United States Supreme Court reversed. In concluding that disbarment fell within the fifth amendment definition of "penalty" the plurality opinion stated:

> "*** '[P]enalty' is not restricted to fine or imprisonment. It means *** the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.' ***." (*Spevack v. Klein* (1967), 385 U.S. 511, 515, 17 L. Ed. 2d 574, 577, 87 S. Ct. 625, 628 (opinion of Douglas, J., joined by Warren, C.J., and Black and Brennan, JJ.).)

(See generally, Comment, *The Privilege Against Self-Incrimination in Bar Disciplinary Proceedings. Whatever Happened to Spevack?* 23 Vill. L. Rev. 127 (1978).) The plurality also stated:

> "*** We conclude that *** the Self-Incrimination Clause of the Fifth Amendment has been absorbed in the Fourteenth, that it extends its protection to lawyers as well as to other individuals, and that it should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it." (*Spevack v. Klein* (1967), 385 U.S. 511, 514, 17 L. Ed. 2d 574, 577, 87 S. Ct. 625, 627 (opinion of Douglas, J., joined by Warren, C.J., and Black and Brennan, JJ.).)

Thus the holding in *Spevack* extends the cloak of the fifth

amendment privilege to the respondents herein.

While extending the scope of the Fifth Amendment, *Spevack* does not define the means of asserting the privilege. Although a witness has a fifth amendment privilege, when there are reasonable grounds to fear self-incrimination, the privilege should not exist where the claim is unfounded. (See *People v. Zazove* (1924), 311 Ill. 198; *Manning v. Mercantile Securities Co.* (1909), 242 Ill. 584; see generally, 98 C.J.S. *Witnesses* §454, at 299 (1957).) An unreasonable fear or mere reluctance to answer should not be grounds for claiming the privilege, and if sole discretion for asserting the privilege rests with the witness, there is a substantial opportunity for abuse. Underwood, *The Fifth Amendment and the Lawyer,* 62 Nw. U.L. Rev. 129, 134 (1967); Niles and Kaye, *Spevack v. Klein: Milestone or Millstone in Bar Discipline?*, 53 A.B.A. J. 1121, 1126 (1967).

The State, the legal profession and this court have significant interests in maintaining the integrity of the bar in Illinois. So vital is this interest that attorneys are expected to assist the Commission. This court has stated:

> "The choice of silence is not open to him [an attorney] if he is to remain an officer of the court." (*In re Royal* (1963), 29 Ill. 2d 458, 460.)

(See also *In re Krasner* (1965), 32 Ill. 2d 121.) Although *Royal* and *Krasner* were decided before the holding of the United States Supreme Court in *Spevack v. Klein,* that decision has not completely deprived those prior holdings of this court of their vitality. Inasmuch as an attorney is an officer of this court and is licensed by this court to exercise the privilege of practicing law, an attorney has an obligation to cooperate with this court and its agency, the Attorney Registration and Disciplinary Commission, in the performance of its duty to police the legal profession in this State. To allow an attorney to claim the privilege, especially when he is the primary source of information, severely hinders the effort of the Commission. Thus a conflict exists between the

rights of a witness and the needs of the Commission and of this court.

Confronted by a similar dilemma, Chief Justice John Marshall, sitting as a member of the circuit court, wrote:

"When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded." *United States v. Burr* (C.C. Va. 1807), 25 Fed. Cas. 38, 39-40 (No. 14692e).

We also must strike a balance which both satisfies the needs of the Commission and protects the rights of the witness. Due to the conflicting interests, as well as to the potential for abuse, we find that in attorney disciplinary hearings it is inappropriate to vest complete discretion solely in the witness in applying the privilege against self-incrimination. Rather, the issue must ultimately be resolved by the court.

This position is consistent with holdings in other proceedings in which courts regularly have found that it is not for the witness alone to decide whether a matter is incriminating. (*Mason v. United States* (1917), 244 U.S. 362, 61 L. Ed. 1198, 37 S. Ct. 621; *Hoffman v. United States* (1951), 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814; *Rogers v. United States* (1951), 340 U.S. 367, 95 L. Ed. 344, 71 S. Ct. 438; see generally Annot., 95 L. Ed. 1126 (1950).) It is for the court to decide whether his fear of incrimination is well founded. *Rogers v. United States* (1951), 340 U.S. 367, 95 L. Ed. 344, 71 S. Ct. 438; *Hoffman v. United States* (1951), 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814; *Abrams v. United States* (2d Cir. 1933), 64 F.2d 22; *Miller v. United States* (9th Cir. 1938), 95 F.2d 492; *Camarota v. United States* (3d Cir. 1940), 111 F.2d 243, *cert. denied* (1940), 311 U.S. 651, 85 L. Ed. 416, 61 S. Ct. 16; *Estes v. Potter* (5th Cir. 1950), 183 F.2d

865, *cert. denied* (1951), 340 U.S. 920, 95 L. Ed. 664, 71 S. Ct. 356; *People v. Bukert* (1955), 7 Ill. 2d 506; *People v. Zazove* (1924), 311 Ill. 198; *People v. Schultz* (1942), 380 Ill. 539.

In *In re March* (1978), 71 Ill. 2d 382, 399, this court considered a related question to the one now before us. The holding in that case does not apply until it is determined that a valid fifth amendment privilege has been asserted. We are here concerned with the method of determining if the assertion of the fifth amendment privilege is in fact "valid." The cases cited above have held that such a determination is not to be left solely with the one claiming the privilege, but is to be judicially made. Once it is determined that the claimed privilege is valid, then *March* is applicable.

Inasmuch as disciplinary hearings are not presided over by a member of the judiciary, in order to secure a judicial determination as to the propriety of the asserted privilege, we adopt the following procedure. In applying to such proceedings the procedural standards enunciated in the above cases, a witness wishing to claim the privilege must appear, as commanded, and claim the privilege as to each incriminating question. At this point the Commission may seek a judicial determination of the validity of the claimed privilege. To facilitate obtaining a judicial determination, it should not be necessary that the Commission apply to this court. A more expeditious disposition will be had if the Commission requests a judicial determination from the chief judge of the circuit in which the proceeding is being conducted, who will then designate a judge to hear the matter. The witness shall appear before the designated judge, who will then determine whether the assertion of the privilege was justified.

If it appears to the judge that the question, on its face, could reasonably elicit an incriminating response, he can bar the answer even without asking the witness to support

his position. (See *United States v. Raley* (D.D.C. 1951), 96 F. Supp. 495.) However, where a question is innocent on its face, the judge may inquire of the witness as to the origin of the claim that the question might incriminate him, and the burden is on the witness to establish the validity of his claim. (*United States. v. Weisman* (2d Cir. 1940), 111 F.2d 260.) However, the witness is not required to prove the hazard in the sense in which a claim is usually required to be established in court. (*Hoffman v. United States* (1951), 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814; *Russell v. United States* (6th Cir. 1926), 12 F.2d 683, *cert. denied* (1926), 273 U.S. 708, 71 L. Ed. 851, 47 S. Ct. 100; *Estes v. Potter* (5th Cir. 1950), 183 F.2d 865, *cert. denied* (1951), 340 U.S. 920, 95 L. Ed. 664, 71 S. Ct. 356.) It need only be established that the answer is likely to incriminate the witness.

In determining the validity of the witness' contention, the court shall take into consideration all of the facts and circumstances of the case. (*Mason v. United States* (1917), 244 U.S. 362, 61 L. Ed. 1198, 37 S. Ct. 621; *Graham v. United States* (9th Cir. 1938), 99 F.2d 746.) The witness shall be allowed to tender whatever proof he wishes to show that an answer might tend to incriminate him. (*Alexander v. United States* (9th Cir. 1950), 181 F.2d 480; *Doran v. United States* (9th Cir. 1950), 181 F.2d 489.) If the witness is under investigation in a criminal matter, the judge should pay added consideration to his assertions. Also, close questions should be resolved in favor of the witness. *People v. Burkert* (1955), 7 Ill. 2d 506; *In re Holland* (1941), 377 Ill. 346; *People v. Rockola* (1931), 346 Ill. 27; *People v. Newmark* (1924), 312 Ill. 625; see generally 37 Ill. L. & Prac. *Witnesses* § 149, at 158 (1958); 98 C.J.S. *Witnesses* § 54, at 303 (1957).

This procedure provides the necessary judicial determination of the propriety of a claimed privilege against self-incrimination in disciplinary proceedings. It removes from the witness the sole discretion of determining whether or not the privilege can be asserted and whether the

questions must be answered.

At this point, the situations before us do not warrant application of the above procedure. As mentioned, before applying this procedure, the claim of the privilege must be properly asserted. Each of the respondents received a subpoena requiring him to appear and testify before the Commission. None of the respondents in question has done so. When served with a subpoena in a disciplinary proceeding which requests an appearance, the privilege against self-incrimination is not properly claimed by merely failing to appear. (See generally 7A C.J.S. *Attorney and Client* § 94, at 36 (1980); *Kanter v. Clerk of the Circuit Court* (1903), 108 Ill. App. 287; *People v. Burkert* (1955), 7 Ill. 2d 506; *Hoffman v. United States* (1951), 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814.) An attorney against whom a disciplinary proceeding is pending does not have a complete immunity from testifying as does a defendant in a criminal case. The attorney must appear as any other witness and assert the claimed privilege as to each incriminating question. (*Black v. State Bar* (1972), 7 Cal. 3d 676, 499 P.2d 968, 103 Cal. Rptr. 288.) The same is true for a *subpoena duces tecum*. The witness must appear with the papers, and a similar judicial determination must be made as to the propriety of a claimed privilege. See *Leahy v. City of Knoxville* (1952), 193 Tenn. 242, 245 S.W.2d 772; see generally 98 C.J.S. *Witnesses* § 454, at 304 (1957).

We next consider the extent of the privilege as to these respondents. In addition to the command to appear and testify, the subpoena also commanded respondent Elias to produce all documents relating to certain named clients. Elias conducted business as a sole practitioner. The applicability of the privilege against self-incrimination to an attorney in his office files was recognized in *Bellis v. United States* (1974), 417 U.S. 85, 40 L. Ed. 2d 678, 94 S. Ct. 2179. In *Bellis* the United States Supreme Court was asked to decide whether a partner in a three-man partnership could invoke

the fifth amendment when asked to produce records of the partnership. Restating well-established concepts, the court concluded that the privilege against self-incrimination extends only to personal communications.

"[A]n individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." (*Bellis v. United States* (1974), 417 U.S. 85, 88, 40 L. Ed. 2d 678, 683, 94 S. Ct. 2179, 2182.)

Thus organizations even as small as a three-man partnership, because of the way in which it carries on business, could take on an identity apart from the individual partners. The court concluded that such a situation had occurred in *Bellis*. It refused to allow the partner to invoke the privilege in records of the partnership since he only held the papers in a representative capacity.

The key question so far as Elias' privilege regarding office documents is concerned is whether Basil Chris Elias, as an attorney at law, had an identity independent of Basil Chris Elias as an individual. We conclude that he did not. Numerous cases have concluded that the privilege applies to the business records of the sole proprietor or sole practitioner, as well as to personal documents concerning the individual's private life. (*Boyd v. United States* (1886), 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524; *Couch v. United States* (1973), 409 U.S. 322, 34 L. Ed. 548, 93 S. Ct. 611; *Stuart v. United States* (5th Cir. 1969), 416 F.2d 459.) Thus the scope of respondent Elias' privilege in his business records is identical to the scope of his privilege regarding personal records.

However, the respondent Elias has failed to appear and produce the documents requested by the Commission. The respondent's failure to do so does not constitute a proper way of claiming the privilege.

Like respondent Elias, respondent Zisook received sev-

eral *subpoenas duces tecum* for office files of certain named clients. Zisook has also failed to comply with those subpoenas. Unlike respondent Elias, however, Zisook does not engage in the practice of law as a sole practitioner. He is an employee of a professional corporation, Sheldon Oliver Zisook Professional Corporation.

The issue in this regard is whether, like the sole practitioner, an attorney practicing as a professional corporation can claim the privilege against self-incrimination in files of the corporation. The respondent contends that he should be allowed to claim the privilege to the same extent as the sole practitioner. The Commission, on the other hand, argues that similar to an employee of a traditional corporation, he should have no privilege in the records of the corporation. We agree and hold that employees of professional corporations do not possess the privilege against self-incrimination so far as records of the corporation are concerned.

Professional corporations in Illinois are governed by the Professional Service Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 415—1). The Act defines the professional corporation as "a corporation organized *** solely for the purpose of rendering one category of professional service *** and which has as its shareholders, directors, officers, agents and employees (other than ancillary personnel) only individuals who are duly licensed by this State *** to render that particular category of professional service *** (except that the secretary of the corporation need not be so licensed)." (Ill. Rev. Stat. 1979, ch. 32, par. 415—3.4.) Other references in the Act closely align the attributes of a professional corporation to those of a traditional corporation. The Act states:

> "'The Business Corporation Act' filed July 13, 1933, as now or hereafter amended, shall be applicable to professional corporations organized under this Act, and they shall enjoy the powers and privileges and be subject to the duties, restrictions, and liabilities of

other corporations, except where inconsistent with the letter and purpose of this Act." Ill. Rev. Stat. 1979, ch. 32, par. 415—4.

Respondent argues that the only reason for the professional corporation structure is to provide a potentially smaller tax liability. The argument continues that since this is the sole similarity to corporations, the professional corporation can hardly be identified with the corporate structure. Such an argument fails to recognize the full range of benefits available to professional corporations. Besides the tax aspect, the professional corporation may issue shares of ownership important in providing alternate means for management and also offers a broad range of benefits not available in an unincorporated organization. See Hanson, *Professional Corporations*, 59 Ill. Bar J. 196, 200 (1970).) Thus, in addition to the statutory alignment of professional corporations with traditional corporations, the attributes of the professional corporation and the benefits available under such an organization closely parallel those of a traditional corporation. Riemer, *Professional Corporations: An Analysis*, 62 Mass. L.Q. 151 (1977).

The similarity continues in terms of burdens placed upon the professional corporation. (Riemer, *Professional Corporations: An Analysis*, 62 Mass. L.Q. 151 (1977); Schmukler, *Partnership, Corporation, Sole Proprietorship or Other Form: How Should I Conduct My Practice?*, 52 Wis. Bar Bull. 8, 10 (1979); Jorrie & Wolf, *Selected Practical Problems With Professional Associations and Professional Corporations*, 10 St. Mary's L.J. 247, 268 (1978).) Indeed, it is a failure to adhere to the indicia of corporateness which renders the status of professional corporations vulnerable to attack. (Riemer, *Professional Corporations: An Analysis*, 62 Mass. L.Q. 151, 156 (1977).) Although a professional corporation may have been established primarily for tax benefits, these aspects clearly demonstrate that the corporateness of the professional corporation is genuine.

This similarity between professional and traditional corporateness has been recognized by the courts in dealing with the question now before us. In *Reamer v. Beall* (4th Cir. 1974), 506 F.2d 1345, *cert. denied* (1975), 420 U.S. 955, 43 L. Ed. 2d 431, 95 S. Ct. 1338, the sole employee and stockholder of a professional corporation was found in contempt for failing to obey a grand jury subpoena for the production of certain corporate records. Referring to *Bellis v. United States* (1974), 417 U.S. 85, 40 L. Ed. 2d 678, 94 S. Ct. 2179, the court stated:

> "'[N]o privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be' ***." (*Reamer v. Beall* (4th Cir. 1974), 506 F.2d 1345, 1346.)

Thus the defendant in that case could not invoke his fifth amendment rights against self-incrimination to justify the nonproduction of the corporation's records.

A similar position was adopted in *United States v. Graham*. Although refusing to enforce a *subpoena duces tecum* on other grounds, the court stated:

> "The financial records of the professional corporation do not in my opinion fall within the protection of the fifth amendment. It is true that the professional corporation is unique and that there is still an individual responsibility for the rendition of services, but the professional corporation is a separate legal entity usually created for tax reasons. If by incorporating tax benefits can be obtained I see no reason why the corporate burdens should not be assumed. I would, therefore, find that even though the investigation is a criminal investigation the corporate records are not protected." (*United States v. Graham* (D.C. Mont. May 16, 1972), 72—2 U.S. Tax Cas. (CCH), par. 9,535.)

Also see *In re Special Grand Jury No. 1 Impaneled December, 1977 Term* (D. Md. 1978), 465 F. Supp. 800.

The application of the fifth amendment privilege as it

relates to traditional corporations was summarized in *United States v. White* (1944), 322 U.S. 694, 88 L. Ed. 1542, 64 S. Ct. 1248. The court stated:

> "Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only the *natural individual* from compulsory incrimination through *his own testimony* or *personal records*." (Emphasis added.) (*United States v. White* (1944), 322 U.S. 694, 700-01, 88 L. Ed. 1542, 1547, 64 S. Ct. 1248, 1252.)

See generally, Comment, *Business Records and the Fifth Amendment Right Against Self-Incrimination,* 38 Ohio St. L.J. 351 (1977); Note, *Fifth Amendment Rights of a Client Regarding Documents Held By His Attorney: United States v. White,* 1973 Duke L.J. 1080.

Thus the privilege protects an employee from disclosing his "personal" records which may incriminate him, but it does not protect him from providing corporate records in his possession, which may incriminate him. The distinction between these two is that in the second situation the witness holds the documents in a representative, as opposed to personal, capacity. *Bellis v. United States* (1974), 417 U.S. 85, 40 L. Ed. 2d 678, 94 S. Ct. 2179; *United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160; *People v. Monroe* (1963), 27 Ill. 2d 449; see generally Annot., 52 A.L.R.3d 19 (1980 Supp).

Thus, employees of professional corporations have no privilege against self-incrimination in documents of that corporation. (See Lipton & Petrie, *Constitutional Safeguards and Corporate Records,* New York University Proceedings of the Twenty-Third Annual Institute on Federal Taxation 1315, 1333 (1965).) Respondent Zisook cannot claim the privilege in the corporate files of Sheldon Oliver Zisook Professional Corporation. Of course, any personal

papers contained in the files are protected.

In summary, Brody was subpoenaed only to appear and testify. He has refused to appear, claiming his privilege against self-incrimination. This is not a proper way to claim the privilege. He must claim it by appearing and asserting it as to each question he feels may be incriminating and having a judicial determination as above noted.

Elias was subpoenaed to produce documents relating to his practice as an attorney, as well as to appear and testify. He, too, failed to comply on the grounds that it will incriminate him. Although as a sole practitioner his privilege extends to his files and records, he has failed to properly claim the privilege, both as it relates to producing his records and to his giving testimony.

Zisook has been subpoenaed to produce certain documents of a professional corporation, as well as to appear and testify. He has failed to comply. The scope of his privilege does not extend to documents of a professional corporation. Likewise, his failure to appear is an improper manner to assert the privilege as it relates to the command to give testimony.

These disciplinary cases are remanded to the Attorney Registration and Disciplinary Commission with directions that new dates be set for compliance with the subpoenas, and in the event of failure to comply in the manner set forth in this opinion, a report of such failure should be filed with this court as provided in our Rule 754 (73 Ill. 2d R. 754).

*Cause remanded,*
*with directions.*