# Illinois Official Reports

## Appellate Court

---

### *People v. DiCosola*, 2015 IL App (2d) 140523

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHELE DiCOSOLA, a/k/a Mike DiCosola, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0523 |
| Filed | January 9, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a complaint filed by the Attorney General seeking injunctive relief for defendant's failure to comply with an investigative subpoena issued to defendant pursuant to sections 3 and 4 of the Consumer Fraud Act based on information that defendant might be violating the Consumer Fraud Act, the Mortgage Rescue Fraud Act and the Attorney Act by selling instructional DVDs, holding seminars, and providing consultations about bankruptcy and foreclosure laws, the trial court properly entered summary judgment for the Attorney General, since the Attorney General's investigation was statutorily authorized, the subpoena was relevant to that investigation, and the preliminary injunction was justified by the potential harm the public might suffer pending disposition of the underlying action. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-CH-5767; the Hon. Terence M. Sheen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Christopher S. Carroll, of Law Office of Christopher S. Carroll, of Aurora, for appellant.

Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Christina T. Hansen, Assistant Attorney General, of counsel), for the People.

Panel

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    On December 9, 2011, the Attorney General filed a complaint against the defendant, Michele DiCosola, for his failure to comply with an investigative subpoena that the Attorney General issued to him pursuant to sections 3 and 4 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/3, 4 (West 2010)). The complaint sought injunctive relief. The trial court granted summary judgment in the Attorney General's favor on the complaint. The defendant appeals from that order. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    On December 9, 2011, the Attorney General filed against the defendant a complaint that included the following allegations. The defendant sold instructional DVDs, held seminars, and provided one-on-one consultations regarding bankruptcy and foreclosure laws. In May 2011, the Attorney General received information indicating that the defendant might be in violation of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2010)), the Mortgage Rescue Fraud Act (765 ILCS 940/1 *et seq.* (West 2010)), and the Attorney Act (705 ILCS 205/0.01 *et seq.* (West 2010)). Pursuant to sections 3 and 4 of the Consumer Fraud Act, the Attorney General issued to the defendant an investigative subpoena requesting that he appear at the Attorney General's office on November 18, 2011, and that he bring certain documents with him. The defendant did not appear for the meeting and did not contact the Attorney General to reschedule. The complaint sought relief under section 6 of the Consumer Fraud Act (815 ILCS 505/6 (West 2010)). Specifically, the Attorney General sought to enforce compliance with the subpoena and to enjoin the defendant from engaging in trade or commerce within Illinois, pending such compliance.

¶ 4    On May 22, 2013, the defendant filed an answer to the complaint. The defendant admitted to selling the DVDs but denied that they were instructional. The defendant admitted that he held a seminar on December 9 and 10, 2011, entitled "Common Law Court Decoded," and that some of the attendants gave him $400. He further admitted posting testimonials on his website and on YouTube from customers who attended his seminars. In one testimonial, the customer

stated that he attended one of the defendant's seminars on foreclosure and further stated: "I was able to save my house, go to court, find remedy, and win my house free and clear. Unbelievable experience." The defendant admitted to offering private consultations on various topics, including issues with foreclosure cases, Internal Revenue Service cases, criminal cases, and sovereignty documents, for $100 per 20-minute private appointment. The defendant also admitted that he was not licensed to practice law in any state. The defendant denied being served with a subpoena and denied any wrongdoing.

¶ 5 On January 28, 2014, the Attorney General filed a motion for summary judgment, arguing that no issue of material fact precluded a finding that the defendant's failure to comply with the subpoena entitled her to relief under section 6 of the Consumer Fraud Act (815 ILCS 505/6 (West 2010)). The Attorney General argued that the defendant violated or might be violating the Consumer Fraud Act by misrepresenting that his goods and services could save a consumer's home from foreclosure. She further stated that she properly served the defendant with a subpoena and a rider on November 10, 2011, and that the defendant never attempted to comply with the subpoena.

¶ 6 On March 11, 2014, the defendant filed a response to the motion for summary judgment. The defendant noted that an administrative investigation is subject to due process constraints and argued that none of his alleged actions gave rise to the inference that he engaged in illegal activity. He further argued that his seminars constituted behavior protected by the first amendment (U.S. Const., amend. I). Only his advertisements constituted unprotected commercial speech, and they were honest and provided no basis for an investigation. The defendant further argued that, under the fifth amendment (U.S. Const., amend. V), he could not be required to respond to the subpoena, because that would force him to incriminate himself. The defendant contended that the allegations against him were nearly parallel to criminal statutes that might otherwise govern his alleged conduct. Finally, the defendant argued that he was not properly served with the investigative subpoena. The investigator who served the defendant did not identify himself, tell the defendant what the documents were, or tell him why he was delivering them. As such, when the investigator dropped the papers on the floor in front of the defendant, the defendant did not pick them up.

¶ 7 The Attorney General filed a reply in support of her motion for summary judgment. The Attorney General argued that the investigator's affidavit was sufficient to establish that the defendant was properly served with the investigative subpoena. She further argued that the defendant's affirmative defenses addressed the merits of the underlying claims but did not provide a defense for his failure to comply with the subpoena. Finally, the Attorney General addressed the affirmative defenses. She argued that the first amendment was not at issue, because there was no speech at issue in the defendant's failure to comply with the subpoena. Further, she argued that the requested materials would not be protected by the first amendment to the extent that they contained false or misleading commercial speech. The Attorney General argued that enforcement of the subpoena did not require probable cause and did not violate the fourth amendment (U.S. Const., amend. IV). As to the defendant's challenge based on the fifth amendment, the Attorney General argued that this right had not been properly invoked.

¶ 8 On May 6, 2014, a hearing was held on the Attorney General's motion for summary judgment. The parties stood on their briefs. The trial court found that the undisputed facts demonstrated that the defendant violated section 6 of the Consumer Fraud Act by failing to comply with the subpoena. The trial court found that issuing the subpoena was within the

Attorney General's power, the demand was reasonably definite, and the information sought was reasonably relevant. Accordingly, the trial court granted the Attorney General's motion for summary judgment. The trial court entered an order enjoining the defendant from "engaging in trade or commerce within the State of Illinois by selling DVDs or other materials, holding seminars, and providing one-on-one consultations regarding bankruptcy, foreclosure or other laws until such time as Defendant complies with the Attorney General's subpoena." The defendant filed a timely notice of appeal.

¶ 9                                            II. ANALYSIS

¶ 10        On appeal, the defendant argues that the Attorney General's investigation is nothing more than a fishing expedition intended to harass him. He implicitly argues that an administrative investigation must be supported by probable cause. The defendant also argues that none of his alleged conduct violated the Consumer Fraud Act, the Mortgage Rescue Fraud Act, or the Attorney Act. He further argues that the fifth amendment bars the subpoena because he is "battling a federal criminal indictment" and there have been no promises of criminal immunity. Finally, he argues that the first amendment bars the Attorney General's investigation. Specifically, he states that "[t]he protected speech at issue here was not the commercial speech (that is, the advertisement) but the *contents* of the subject lectures which is protected speech." (Emphasis in original.)

¶ 11        The Consumer Fraud Act is "intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them." *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 288 (1981). Section 3 of the Consumer Fraud Act grants the Attorney General the authority to investigate potential wrongdoing, under the following condition:

> "When it appears to the Attorney General that a person has engaged in, is engaging in, or is about to engage in any practice declared to be unlawful by the Act; *** or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any practice declared to be unlawful by this Act[.]" 815 ILCS 505/3 (West 2010).

Section 4 of the Consumer Fraud Act grants the Attorney General the power to issue subpoenas as a manner of conducting investigations. 815 ILCS 505/4 (West 2010). Additionally, the Consumer Fraud Act provides remedies for the failure to cooperate in an investigation. Pursuant to section 6 of the Consumer Fraud Act (815 ILCS 505/6 (West 2010)), the Attorney General may file a complaint in the circuit court, seeking injunctive relief for the failure to comply with an investigation. The injunctive relief may "restrain[ ] the sale or advertisement of any merchandise *** or the conduct of any trade or commerce." 815 ILCS 505/6(a) (West 2010).

¶ 12        In the present case, the Attorney General alleged that she had received information suggesting that the defendant might be violating the Consumer Fraud Act, the Mortgage Rescue Fraud Act, and the Attorney Act. Pursuant to sections 3 and 4 of the Consumer Fraud Act (815 ILCS 505/3, 4 (West 2010)), the Attorney General had the power to conduct an investigation and issue an investigative subpoena. It is undisputed that the defendant failed to comply with the subpoena. Accordingly, under section 6 of the Consumer Fraud Act (815 ILCS 505/6 (West 2010)), the Attorney General was entitled to summary judgment and the injunctive relief granted by the trial court.

¶ 13    As noted, the defendant implicitly argues that an administrative investigation must be supported by probable cause. However, it is well settled that neither the Illinois nor the federal constitution requires a showing of probable cause to initiate an administrative investigation. *Scott*, 88 Ill. 2d at 293 (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208-09 (1946)). At this point in the proceedings, the Attorney General was not required to state allegations demonstrating specific violations of the Consumer Fraud Act, the Mortgage Rescue Fraud Act, or the Attorney Act. Rather, the purpose of the investigation and the reason for issuing the subpoena was to determine whether in fact the defendant violated any of these statutes. See *Scott*, 88 Ill. 2d at 298 (the purpose of an administrative investigation is to gather information that "may or may not" provide grounds for further action).

¶ 14    In evaluating whether an investigative subpoena is valid and enforceable, courts consider the following: (1) the constitutionality of the authorizing statute; (2) whether the contemplated agency proceedings are included within the statutory authority; (3) the reasonableness of the demand; and (4) the relevance of the information sought. *Scott*, 88 Ill. 2d at 296. The Consumer Fraud Act is constitutional (*id.*), and sections 3 and 4 authorized the Attorney General to conduct the investigation (815 ILCS 505/3, 4 (West 2010)). The defendant does not argue that the information sought was unreasonable or irrelevant. Accordingly, the subpoena does not violate the fourth amendment.

¶ 15    The defendant further argues that, pursuant to the fifth amendment, he is not required to comply with the investigative subpoena. The fifth amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In an analogous context, our supreme court held that "[w]hen served with a subpoena in a disciplinary proceeding which requests an appearance, the privilege against self-incrimination is not properly claimed by merely failing to appear." *In re Zisook*, 88 Ill. 2d 321, 335 (1981).

¶ 16    In *Zisook*, three attorneys received subpoenas to testify concerning certain matters. *Id.* at 326. The subpoenas were issued at the request of the Attorney Registration and Disciplinary Commission (ARDC). *Id.* The attorneys informed the ARDC that they believed that the information being sought would incriminate them, and they thus refused to appear or produce documents in response to the subpoena. *Id.* at 327. The ARDC initiated proceedings in our supreme court, and a rule to show cause was issued requiring the attorneys to appear and explain why they should not be suspended from the practice of law for failing to comply with the subpoenas. *Id.* Our supreme court held that, while the attorneys possessed the right against self-incrimination, refusing to appear in response to a subpoena was not an appropriate way to invoke it. *Id.* at 328. The court explained that, in order to invoke the right, a party must appear in response to a subpoena and invoke it with respect to each specific request that implicates it, so that, if necessary, a judicial determination can be made as to the validity of the assertion. *Id.* at 333.

¶ 17    In the present case, as in *Zisook*, the defendant might be entitled to invoke the right against self-incrimination, but refusing to appear in front of the Attorney General in response to the subpoena was not an appropriate way to invoke it. Rather, the defendant was required to appear and then invoke the fifth amendment in response to any questions asked or requests for certain documents. The defendant also argues that forcing him to respond to the subpoena would violate the fifth amendment because he is subject to a federal criminal indictment. We agree that an administrative agency may not use its subpoena powers for the improper purpose of obtaining documents to aid in a criminal prosecution. *Department of Revenue v. Olympic*

*Savings & Loan Ass'n*, 78 Ill. App. 3d 668, 675 (1979). However, there is no evidence that the Attorney General is aiding or participating in any criminal prosecution of the defendant. As such, the fifth amendment does not provide the defendant with any proper basis for noncompliance with the subpoena.

¶ 18    Finally, the defendant argues that the "sweeping injunction" entered in this case violates his first amendment rights, as the underlying commercial speech was not false or misleading. This argument is premature. The defendant is raising a first amendment defense to the underlying conduct that the Attorney General is attempting to investigate. The underlying conduct is not at issue in this case. Rather, the defendant's failure to comply with the subpoena is the conduct at issue here.

¶ 19    We note that the defendant cites *United States v. Benson*, 561 F.3d 718 (7th Cir. 2009), for the proposition that the injunction violates his first amendment rights. In that case, an injunction was entered against the defendant, William Benson, pursuant to section 7408 of the Internal Revenue Code (26 U.S.C. § 7408 (2006)), enjoining him from promoting and selling tax-avoidance materials that were false and misleading. In promoting his materials, Benson promised potential customers that his products would free them from taxation and defend them in the event of prosecution. *Benson*, 561 F.3d at 725. The court held that these promises were made for the purpose of selling his materials and were thus commercial. It further held that the promises were false because, rather than selling a way to avoid tax liability, Benson was really selling a way to increase tax and criminal liability for failing to pay taxes. *Id.* at 726. Accordingly, because of the false promises, Benson's speech was not protected by the first amendment. *Id.* In so ruling, the court noted:

> "Benson may openly share his views about the ratification of the Sixteenth Amendment or the tyranny of the federal government and IRS. It is not illegal for Benson to urge his followers to take political action. What is illegal, and enjoined, is for Benson to try to sell something he does not possess–the golden ticket of tax evasion without consequences. Therefore, according to our great tradition of tolerating nutty opinions, the marketplace of ideas remains open to Benson; the commercial marketplace, however, is appropriately limited to speech that is not deceptive." *Id.*

¶ 20    *Benson* does not support the defendant's argument that the injunction in this case was too broad. Rather, *Benson* supports the proposition that enjoining false commercial speech does not violate the first amendment. *Id.* At this stage, the Attorney General is still investigating whether the defendant's promotion and sale of his DVDs, seminars, and consultation services are false and misleading commercial speech. In *Scott*, our supreme court rejected a first amendment challenge to section 2 of the Consumer Fraud Act. *Scott*, 88 Ill. 2d at 287. In so ruling, the court noted that "the Supreme Court has repeatedly emphasized that the first amendment is not a bar to State regulation prohibiting false, misleading or deceptive commercial speech." *Id.* It further noted that " 'the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity.' " (Internal quotation marks omitted.) *Id.* (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)). Here, the Attorney General is conducting a statutorily authorized investigation into the defendant's activities, and the subpoena at issue is relevant to that investigation. The injunction is a proper way to urge compliance with the subpoena. 815 ILCS 505/6 (West 2010); see also *People ex rel. Scott v. Johnson*, 77 Ill. App. 3d 529, 532 (1979)

(holding that preliminary injunction under section 6 of the Consumer Fraud Act is justified by the potential for harm to the public pending disposition of the underlying suit).

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

Affirmed.